(December 23, 1911.)

## STATE, Respondent, v. C. F. OSMERS, Appellant.

[120 Pac. 165.]

LOCAL OPTION ACT—PURE ALCOHOL—SALE OF—MEDICINAL PURPOSES—
WRITTEN APPLICATION FOR—PHYSICIAN'S PRESCRIPTION.

(Syllabus by the court.) ·

1. Under the provisions of sec. 15 of the local option act (Laws 1909, p. 9), a sale in prohibition districts of pure alcohol for medicinal, mechanical, manufacturing or scientific purposes, or wines for sacramental purposes, may be legally made upon the written application of the purchaser, and pure alcohol may be sold for medicinal purposes without the prescription of a duly licensed physician of the state.

2. The provisions of said act which require a physician's prescription before a legal sale can be made apply to intoxicating liquors that are used as a beverage and not to pure alcohol.

3. Said act makes it a misdemeanor for the seller to sell pure alcohol except upon the written application prescribed by said act, and also makes it a misdemeanor for him to sell intoxicating liquors that are used as a beverage except on the prescription of a duly licensed physician.

4. Said act makes it a misdemeanor for a purchaser to purchase pure alcohol except on the written application as prescribed by said act, and also makes it a misdemeanor for him to use it for any other purpose than that named in the written application.

5. Any licensed pharmacist or other person authorized to sell pure alcohol under the provisions of said act, who shall knowingly sell the same upon written application of the purchaser, which is intended by the purchaser to be used for unlawful purposes, is guilty of a misdemeanor.

APPEAL from the District Court of the Second Judicial District for Nez Perce County. Hon. Edgar C. Steele, Judge.

The defendant was convicted of selling pure alcohol upon the written application of the purchaser for medicinal purposes and sentenced to pay a fine of fifty dollars. Judgment - *reversed.*

Eugene A. Cox, for Appellant.

The purpose of this act and of all similar legislation is to restrict the use of intoxicating liquors as beverages. The interpretation which the state seeks to place upon this law does not further that purpose; it rather hinders it. It does not make pure alcohol more difficult to obtain for illicit purposes; it only makes the law, which before was plain, more difficult for men to understand and obey.

The weakness of the state's contention is that, in order to make its position tenable, the plain and manifest meaning of the act must be ignored, the context of words overlooked, and an unnatural and strained interpretation given to the language of the legislature.

The legislature could not prohibit the use or sale of alcohol for medicinal purposes while physicians and surgeons commonly use and recognize it as necessary medicine. (Freund, Police Power, p. 152.)

D. C. McDougall, Attorney General, and Dwight E. Hodge, County Attorney, for Respondent.

With practical unanimity the courts of this country take judicial notice of the fact that alcohol is a spirituous liquor; hence, under the definition of the statute, it is an intoxicating liquor.

There is no inherent right in the people to engage in the traffic in intoxicants in any such sense as to remove it from the legislative sphere of legislative control. (25 Cyc. 65; *Gillesby v. Board of County Commissioners,* 17 Ida. 586, 107 Pac. 71; *Darby v. Pence,* 17 Ida. 697, 107 Pac. 484, 27 L. R. A., N. S., 1194; *State v. Calloway,* 11 Ida. 719, 114 Am. St. 285, 84 Pac. 27, 4 L. R. A., N. S., 109.)

Statutes prohibiting or regulating the sale of intoxicating liquors are applicable to druggists and physicians unless exceptions or special provisions are made in their favor. (23 Cyc. 166; *Hutson v. Commonwealth,* 32 Ky. L. 392, 105 S. W. 955; *Commonwealth v. Reynolds,* 89 Ky. 147, 12 S. W. 132, 20

S. W. 167; *Commonwealth v. Fowler*, 98 Ky. 648, 34 S. W. 21; *State v. Durein*, 70 Kan. 13, 80 Pac. 987, 15 L. R. A., N. S., 908; *Durein v. State*, 208 U. S. 613, 28 Sup. Ct. 567, 52 L. ed. 654.)

It is clear that the legislature sought to make prohibition as nearly absolute in a prohibition district within this state as the medical, manufacturing and scientific practices of the state and customs of the state's inhabitants made practicable.

P. E. Stookey, *Amicus Curiae.*

Alcohol is an intoxicating liquor. (*Snider v. State*, 81 Ga. 753, 12 Am. St. 350, 7 S. E. 631; 3 Cyc. 61–63.)

The physician is the only person qualified to prescribe the use of alcohol, and the legislature so intended. (*Battle v. State*, 51 Ark. 97, 10 S. W. 12; *Commonwealth v. Fowler*, 96 Ky. 166, 28 S. W. 786, 33 L. R. A. 839; *Parker v. Commonwealth*, 11 Ky. L. 454, 12 S. W. 276; *Commonwealth v. Reynolds*, 89 Ky. 147, 12 S. W. 132, 20 S. W. 167.)

The state may absolutely prohibit the manufacture and sale of intoxicating liquors. (*License Cases*, 5 How. 504, 12 L. ed. 256; *State v. Durein*, 70 Kan. 13, 80 Pac. 991, 15 L. R. A., N. S., 908; *Jacobs Pharmacy Co. v. Atlanta*, 89 Fed. 244; *Kansas v. Bradley*, 26 Fed. 289; *Giozza v. Patrick Tiernan*, 148 U. S. 662, 13 Sup. Ct. 721, 37 L. ed. 602.)

SULLIVAN, J.—This is an appeal from a judgment of conviction for selling one-half pint of pure alcohol for medicinal purposes on a written application of the purchaser and without a physician's prescription therefor, and is presented on stipulated facts.

It is stipulated, among other things, that the defendant is a duly qualified druggist under the laws of this state and is the president and general manager of the Idaho Drug Company, and in charge of its retail and wholesale business carried on at Lewiston, Idaho; that on the 3d day of August, 1911, C. F. Hersey, a farmer, applied to defendant at said corporation's said place of business during business hours to purchase one-half pint of pure alcohol for medicinal purposes,

and that at said time and place said C. F. Hersey, for the purpose of procuring such alcohol, signed and delivered to defendant, as an agent of said corporation, an application for the purchase thereof in the words and figures following, to wit:

　　　　　　　　　　　"Lewiston, Idaho, 8/3/11.

"I, C. F. Hersey, residing at Lewiston in the county of Nez Perce in the state of Idaho, by occupation a farmer, do hereby make application to purchase ½ Pt. alcohol of Idanha Pharmacy, to be used for Medicinal purposes, and for those purposes only.

　　　　　　　　(Signed)　"C. F. HERSEY."

Upon the signing and delivery of the said application, defendant, as an agent of said corporation, sold and delivered to the said C. F. Hersey one-half pint of pure alcohol upon said application, without a physician's prescription being had or made therefor.

It appears that the defendant, as a duly licensed pharmacist engaged in the drug business, sold one-half pint of pure alcohol in a prohibition district in good faith for medicinal purposes, upon a written application. The state contends that said sale was a misdemeanor, for the reason that a physician's prescription did not accompany the written application; that in such a case it requires the physician's prescription and also a written application from the purchaser; while defendant contends that only a written application is required under the law. This prosecution was made under the provisions of an act commonly known as the local option law, approved February 20, 1909, and acts amendatory thereof (Sess. Laws 1909, p. 9), and involves the construction of several sections of said act.

Sec. 15 of said act is as follows:

"The provisions of this Act shall not be so construed as to prohibit the sale of denatured and wood alcohol, or the sale in prohibition districts of pure alcohol for medicinal, mechanical, manufacturing, or scientific purposes, or wines for sacramental purposes: *Provided, however,* That no pure alcohol or wine for any of the purposes mentioned shall be sold or

delivered to any person, until such person signs a written application therefor in substantially the following form:

"Application to Purchase Intoxicating Liquors.

"I, ———, residing at ———, in the County of ———, in the State of Idaho, by occupation a ———, do hereby make application to purchase ——— of ——— to be used for ——— purposes and for those purposes only.

"Dated this ——— day of ———, 19——.

"_____.

"Intoxicating liquors shall never be sold in prohibition districts as medicine, except in case of actual sickness, and upon the written prescription of a duly licensed physician of this State, and such prescription shall contain the name and quantity of liquor prescribed, the name of the person for whom prescribed, the day upon which the prescription was written, and the direction for the use of the liquor so prescribed: *Provided,* That a duly licensed physician who does not follow the practice of medicine as a principal and usual calling shall not be authorized to give the prescription permitted by this section: *Provided, further,* That no person shall be allowed to sell more than once on one prescription, nor shall any person be permitted to sell at all on the prescription of a physician not authorized herein to give it, nor on a prescription which in form does not comply with the provisions of this section.

"Every person selling such liquor upon the prescription provided for shall, immediately after making such sale, cancel such prescription by endorsing thereon the words, 'Canceled,' and the date of such cancellation, and keep the same until by him filed with the County Auditor as hereinafter directed. Nothing in this Act shall be construed to prevent one registered pharmacist, who is actually engaged in the pharmaceutical business at the time of making such sale, selling or disposing of intoxicating liquors to another registered pharmacist so engaged. Any person who shall make any false statement in an application to purchase intoxicating liquors or shall use as a beverage the intoxicating liquors so procured

under this Act, shall be guilty of a misdemeanor and punished as provided herein.''

Section 17 provides:

''In any prohibition district of this State, any person who sells or disposes of intoxicating liquors must keep a full and complete record of all sales made by him thereof and he must file with the County Auditor of the county, on the first day of the month immediately following the date of such sale so made, all original prescriptions of physicians and applications by others upon which he has made any sale of such intoxicating liquors, and such original prescriptions and applications must be kept in the possession of the County Auditor for the period of two years following the filing thereof. Any person who shall fail to file the prescriptions of the physicians and applications of others as herein required, or shall destroy, alter or change in any way, any such records or any part thereof, or any prescription of any physician, or any such application, or shall sell any intoxicating liquors for medicinal purposes except on the written prescription of a physician as herein provided, shall be guilty of a misdemeanor and punished as provided in this Act.''

Section 31 is as follows:

''The words 'intoxicating liquors' as used in this Act shall be deemed and construed to include spirituous, vinous, malt and fermented liquors, and all mixtures and preparations thereof, including bitters and other drinks that may be used as a beverage and produce intoxication.''

The contention of the state is that in addition to having the written application of the would-be purchaser, the druggist must also have the written prescription of a duly licensed physician before he can legally sell pure alcohol for medicinal purposes, and that pure alcohol may be legally sold for mechanical, manufacturing or scientific purposes under the provisions of said act upon the written application of the purchaser.

The legislature was very explicit in the language used in said section 15. The exact words are:

''The provisions of this Act shall not be so construed as to prohibit . . . . the sale in prohibition districts of pure alcohol

for medicinal, mechanical, manufacturing or scientific purposes: . . . . *Provided, however,* That no pure alcohol . . . . for any of the purposes mentioned shall be sold or delivered to any person, until such person signs a written application therefor in substantially the following form: . . . . ''

That language clearly implies that pure alcohol may be legally sold for the purposes mentioned therein upon the written application of the purchaser. After having thus provided for the sale of pure alcohol for the purposes therein named, upon the written application of the purchaser, in the next paragraph of that section it is provided: ''Intoxicating liquors shall never be sold in a prohibition district as medicine, except in cases of actual sickness and upon the written prescription of a duly licensed physician,'' etc. The question arises: Did the legislature intend that the terms ''pure alcohol'' and ''intoxicating liquors'' mean the same thing and thus class pure alcohol as an intoxicating liquor used as a beverage?

By said act the legislature sought to restrict the sale of intoxicating liquors as a beverage and not to prohibit the sale thereof entirely. All such beverages contain alcohol but are very different from pure alcohol. In said section the legislature seems to have distinguished between ''intoxicating beverages'' and ''pure alcohol,'' in that it was intended to restrict the use of ''intoxicating beverages'' and prohibit their use except as a medicine, while ''pure alcohol'' was recognized not only as a medicine but as useful for ''mechanical, manufacturing and scientific purposes.'' As to ''intoxicating liquors,'' the legislature could accomplish all that it desired by providing that sales should only be made upon the prescription of a physician and only in case of actual sickness; but in the case of ''pure alcohol,'' obviously no such limitation was intended to be made since many of its most important uses are not medicinal. This fact the legislature evidently recognized in the passage of said act. If it was intended that on a legal sale of ''pure alcohol'' for medicinal purposes a physician's prescription and the written application of the patient

are required, then more is required in the sale of pure alcohol for medicinal purposes than is required for the sale of intoxicating liquors for such purposes, as in the latter case only the prescription of a physician is required. It would seem futile to require a physician's prescription in the sale of pure alcohol for medicinal purposes, while allowing it to be freely sold for other purposes on written application without a prescription. The history of "pure alcohol," I think, will show that it is more generally and variously used and, in the present state of medical science, more indispensable than any other single substance. Of the twenty-eight solid extracts of the druggist, seventeen are prepared from or by the use of alcohol. (Eighth Decennial Revision Pharmacopoeia of the U. S., p. 133 et seq.) Pure alcohol is used in nearly all of the tinctures of the druggists such as ammonia, benzine, camphor, glycerine, iodine, and others, all of which are substances dissolved in alcohol. It is also used as a solvent for fats, oils and resins. Most of the liquid antiseptics and fluid extracts and essences and liniments are preparations containing alcohol. It is used in the preparations of chloroform, ether, chloral, bay-rum, and a host of other remedies that are considered very necessary by the medical profession and others. Chloroform is produced from alcohol and sulphuric acid and all the ordinary anesthetics are prepared by the use of alcohol. Alcohol is a constituent of all alcoholic beverages just the same as it is of arnica, glycerine, chloroform, but it is an entirely different thing from whisky or chloroform. Pure alcohol is not a beverage but a violent irritant. There is no question but that the legislature may absolutely prohibit the manufacture and sale of alcohol and all intoxicants for beverages. It is clear that the legislature by said local option act considered that all alcoholic beverages have no necessary use except as medicines. In cases of pneumonia, typhoid, consumption and other diseases, the use of certain intoxicants is considered indispensable in the present condition of medical science, and in the consideration of public welfare. The legislature has not prohibited the doctor from prescribing intoxicating liquors for patients or the patient

from receiving them as medicine. The legislature in adopting the local option act took into consideration the many uses to which pure alcohol was put by the druggist, the physician and others, and in said sec. 15 made a provision for the sale of pure alcohol for medicinal, mechanical, scientific and manufacturing purposes, and provided that sales for those purposes might be made upon the written application therefor, and gives the form of the written application. Then follows a provision concerning the sale of intoxicating liquors in prohibition districts as a medicine, and it provides that intoxicating liquors shall not be sold in such districts except in case of actual sickness and upon the written prescription of a duly licensed physician of the state, and that such prescription shall contain the name and quantity of the liquor prescribed, the name of the person for whom prescribed, and the date upon which the prescription was written and the direction for the use of the liquor so prescribed. This provision clearly refers to intoxicating liquors which are used as beverages and not to pure alcohol.

The substance and form of prescriptions of the physicians prescribed by statute could not be made to apply to the furnishing of alcohol in quantities to physicians, dentists, osteopaths and persons in the medical profession for their medicine cases or small supplies to be kept on hand, and such prescriptions would not apply to hospitals, sanitariums, pesthouses and other like places where small quantities are usually and necessarily kept on hand for medical purposes. In such cases no prescription could be furnished in compliance with the requirements of the law as to what such prescription must contain. Taking into consideration all of these things and the object and purpose of said act, it is clear to us that the requirement of a physician's prescription was not intended to apply to the sale of pure alcohol for medical purposes. Many use it so commonly and beneficially for lawful purposes that no physician's prescription is necessary to inform them how to use it. The number of people who use pure alcohol for illegal purposes is very small as compared with the great number who use it lawfully and beneficially, and the

number is so great who so use it without the necessity of a physician's prescription that the legislature no doubt concluded that the sales of pure alcohol could be sufficiently limited and guarded by requiring the purchaser to file his written application therefor, and making it a misdemeanor for the purchaser to use it for any other purpose than that stated in his application, and not require a physician's prescription when it was purchased for medical, mechanical, manufacturing or scientific purposes. The form of prescription required by said act would be totally inadequate to cover the extensive use of pure alcohol for medical purposes by hospital, osteopaths, dentists and others who, under the construction of said act, as contended for by counsel for the state, would not be able to purchase it at all. If a prescription for pure alcohol for medical purposes had been intended, the legislature certainly would have provided the form of one that would meet the necessities of those who are required to keep a supply on hand, such as sanitariums, hospitals, osteopaths, and others. It is made a misdemeanor to sell such liquor on a prescription that does not conform to the provisions of said act; and if a duly licensed physician desired to give a prescription to a hospital, osteopath or others who used pure alcohol in their avocation or business for the improvement of the health of their patients, he could not make it conform to the provisions of said act and the druggist could not legally sell except on the form of prescription prescribed by the statute.

It must be conceded that the nature and functions of pure alcohol and alcoholic beverages are very different; that pure alcohol has a vast number of uses in medicine, mechanical, manufacturing and scientific purposes which alcoholic beverages do not have. It must also be conceded that alcoholic beverages have no necessary use except as medicines. That being true, the legislature may provide by legislative enactment that such beverages may be used only as medicines on the prescription of a duly qualified physician. That would be a proper police regulation, as it is a well-recognized fact that excessive use of such beverages interferes with the sobriety, peace and welfare of the people. In the enactment of

said law the legislature has not undertaken to prohibit the use of intoxicating liquors for medicinal purposes but has prohibited their use as beverages.

Counsel for the state contend that the legislature by section 31 of said act, above quoted, has defined the words "intoxicating liquors," and that as there defined pure alcohol is included therein. The provisions of said act must be construed together, and it is clear that the legislature intended to prohibit the use of all intoxicants, including spirituous, vinous, malt and fermented liquors and all mixtures and preparations thereof, including bitters and other drinks that are used as beverages and produce intoxication, except for medical purposes, and has placed pure alcohol in a class by itself and permitted it to be sold upon written application.

Pure alcohol, as above stated, is not a beverage, but a violent irritant. Absolute alcohol is defined by the U. S. Pharmacopoeia, Eighth Decennial Revision, p. 34, as Ethyl Alcohol ($C_2$ $H_5$ OH–45.70), containing not more than 1% by weight of water; and alcohol is defined by the same work, p. 33, as a liquid composed of 92.3% by weight, of absolute Ethyl Alcohol, and about 7.7%, by weight, of water. This latter is the alcohol that is termed "pure alcohol" by said local option law. Diluted alcohol is a liquid of about 41.5%, by weight, of absolute Ethyl alcohol, and about 58.5%, by weight, of water (Id., p. 34), and it is diluted alcohol that is used as a beverage and not pure alcohol. Pure alcohol as sold by druggists generally is the alcohol containing 92.3% by weight of Ethyl alcohol and 7.7% of water. That kind of alcohol is not used as a beverage, and that is the only kind that druggists are authorized to sell under the pure food law of the United States, as well as under the provisions of said local option act, upon written application. While it is true pure alcohol may be reduced by the addition of water and used as a beverage, it is not classed as an intoxicating liquor that is used as a beverage, and if the legislature had desired to prohibit the sale of pure alcohol for medical purposes except on the prescription of a duly licensed physician, it would have been an easy matter for them to clearly so state in said act.

As above shown, pure alcohol is used for medicinal purposes in so many ways and in such varying quantities that the form of prescription provided by said act could not be made to apply, and that is one of the cogent reasons for holding that the legislature did not intend to require a prescription upon the sale of pure alcohol for medical purposes.

Notwithstanding the fact that the legislature in said section 15 has provided that pure alcohol may be sold for medical purposes by a druggist upon the application of an individual, the legislature also has taken the precaution to provide a punishment where such pure alcohol is sold upon an application for medical purposes and used by the purchaser as a beverage, clearly indicating the intention to limit the use of pure alcohol to the purposes for which it is sold or purchased.

There is some apparently conflicting language used in said act and incongruity in some of its provisions, but taken as a whole we think the intention of the legislature is in conformity with the views expressed in this opinion. We therefore hold that under the provisions of said act pure alcohol may be sold as provided in said act for medicinal purposes upon the proper written application of the party desiring it and without the prescription of a duly licensed physician.

Stewart, C. J., concurs.

Ailshie, J., did not sit at the hearing nor take any part in the decision.