## UNITED STATES v. WILLIAMS.
### No. 738.

District Court, M. D. Pennsylvania.
Aug. 18, 1930.

Myer Kabatchnick, of Scranton, Pa., and Nathaniel Jacobs, of Wilkes-Barre, Pa., for petitioner.

Andrew B. Dunsmore, U. S. Atty., of Wellsboro, Pa., and Herman F. Reich, Asst. U. S. Atty., of Sunbury, Pa.

JOHNSON, District Judge.

This is a motion and rule thereon to show cause why the search warrant issued in the above-entitled case should not be quashed, the evidence obtained thereunder suppressed, and the goods seized by virtue thereof returned to the petitioner, Nathan Williams.

The petitioner has assigned sixteen reasons in support of his motion which may be grouped and reduced to three reasons, as follows: First, that the search warrant and its return set forth no copy of a detailed receipt for the goods seized given by the officers seizing the goods to the owner; secondly, that the search warrant is not directed to the known owner, according to the ownership set forth in the description of the premises, and, thirdly, that the affidavit upon which the search warrant was issued failed to state

sufficient facts to establish probable cause for issuing the search warrant which was issued in violation of the Fourth Amendment to the Constitution of the United States.

The United States of America filed its answer to the petition generally denying the allegations of the petition and averring that the petitioner has not shown any jurisdiction for the consideration of the petition in that he does not claim any right, title, or interest in the property seized and premises searched.

█ In support of the contention that the petitioner is without standing to question the validity of the search warrant because he has not claimed an interest in the premises searched and the property seized, counsel for the United States has cited the decision in United States v. Gass (D. C.) 14 F.(2d) 229, and the decision on the rehearing of this case reported in (D. C.) 17 F.(2d) 996. In that case, the petitioner was a person not mentioned in the search warrant, was not the owner of the premises nor of the goods seized, and it does not appear that he was the person to whom a copy of the warrant was given. In the present case, the name of the petitioner, according to the affidavit for the search warrant, was painted in large letters on two sides of the building searched. The petitioner is also named in the return to the search warrant as the person from whom the property was taken. Section 16 of the Espionage Act, USCA, title 18, § 626, provides as follows: "If it appears that the property or paper taken is not the same as that described in the warrant or that there is no probable cause for believing the existence of the grounds on which the warrant was issued, the judge or commissioner must cause it to be restored to the person from whom it was taken. * * * "

In this case it is apparent from a reading of the search warrant that the petitioner, Nathan Williams, is the person from whom the property in question was taken, and that he was the owner or had an interest in the premises searched and the property seized, and, if the property is to be returned under the law, it must be returned to Nathan Williams, the petitioner, from whom it was taken, as required by the Espionage Act. It would serve no purpose to require an averment in the petition to quash the search warrant that the petitioner was the owner of the premises searched or the property seized, and the United States is precluded from denying that Nathan Williams is the person from whom the property was taken. For the rea-

sons stated above, the contention of the United States of America that the petitioner does not have any standing to question the validity of the search warrant is overruled.

The relevant parts of the affidavit of the prohibition agents upon which the search warrant was issued are as follows:

"That he has good reason to believe and does believe that in and upon certain premises within the Middle District of Pennsylvania, to-wit, premises of a one story and basement red brick building, with stone foundation about 4½ feet high, being easily distinguished by sign painted on building reading as follows: 'Nathan Williams, Wholesale Grocer,' printed on Pennsylvania St. side of building near the top in large white letters on black back-ground; and also having printed on Pennsylvania St. side 'Coffee, Tea, Spices, and Drug Specialties and Lilac Tea' and on the Jackson St. side in large letters near the stone foundation 'Nathan Williams, Grocer's Specialties' said building being located at the corner of Pennsylvania Street and Jackson Street and being known as 152 N. Pennsylvania Avenue, in the City of Wilkes Barre, County of Luzerne and State of Pennsylvania, there have been and are now located and concealed intoxicating liquors (or property designed for the manufacture of intoxicating liquors) which said liquors (or property) are being sold, manufactured or possessed for beverage purposes in violation of the National Prohibition Act (27 USCA) and the Statutes of the United States.

"That the facts tending to establish the grounds of this application, and the probable cause of affiant's believing that such facts exist, are as follows:

"(a) That on or about the 30th day of May, 1930 at about the hour of ..M.. between the hours of 1 P. M. and 2:30 P. M. in company with agents Held and Flood, he had the above described premises under close observation, and again on or about June 5, 1930, between the hours of 9:30 P. M. and 11 P. M. in company with agents Kokel and Hutchins, he had the same described premises under observation; that he saw through the window of the door a large number of five gallon metal cans, such as are commonly used for transporting alcohol; that he saw lights in the basement of the above described premises and that he detected a strong odor of alcohol emanating from the above described premises; that he has been investigating violations of the National Prohibition Act for the past eighteen (18) months and that he is thoroughly familiar with the odor of al-

cohol; that he has examined the records of the Deputy Prohibition Administrator's Office for the Middle District of Pennsylvania, and finds that the above described premises does not have a permit to manufacture, store, sell or possess beer, alcohol or cereal beverages; the owner of the above described premises at the present time is unknown."

The questions arising on the petition, are: First, whether the failure to set forth in the search warrant on its return a copy of a detailed receipt for the goods seized given by the officer seizing the goods to the owner thereof invalidates the search warrant; secondly, whether the name of the owner must be given in a search warrant directed to a search of the premises; and, thirdly, whether the facts averred and sworn to in the affidavit constitute probable cause on which to base a valid search warrant.

■ There is no merit in the petitioner's contention that the failure to set forth in the return to the search warrant a copy of a detailed receipt for the goods seized given by the officer seizing the goods to the owner invalidates the search warrant. At the hearing before this court this contention was not pressed. The return on the search warrant contains an inventory of the property seized and a certificate that a copy of the search warrant, together with a detailed receipt for the liquor or property taken, was given to the petitioner, Nathan Williams. Counsel for the petitioner has cited no law requiring that the return to the search warrant set forth a copy of the receipt. The averment of the officer serving the search warrant that a receipt was given is sufficient. USCA, title 18, §§ 622, 623, 624.

■ Coming to the second question, whether the name of the owner must be stated in the search warrant directed to the search of premises, it will be observed that the search warrant in this case was directed to the search of premises and not to the search of any person. It has been held that, where a search warrant is directed to the search of premises, it is not necessary that it name particular person; the designation of the place to be searched is held to be sufficient. United States v. Camarota (D. C.) 278 F. 388; Petition of Barber (D. C.) 281 F. 550; Barrett v. United States (C. C. A.) 4 F.(2d) 317; Cornelius on Search and Seizure, § 115.

■ The serious question in this case is presented by the contention of the petitioner that the affidavit upon which the search warrant was issued failed to state facts sufficient to establish probable cause for believing that a violation of the National Prohibition Law was being committed on the premises in question.

Article 4 of the Amendments to the Constitution of the United States, provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Section 613 USCA, title 18 (Act of June 15, 1917, c. 30, Title 11, § 3, 40 Stat. 228), provides: "A search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person and particularly describing the property and the place to be searched."

The search warrant conforms to the amendment, in that it is supported by oath and describes particularly the place to be searched—wholesale warehouse—and describes generally the things to be seized, leaving open only the question of probable cause. As set forth in the affidavit, the affiant stated that he saw through the window of the door a large number of five-gallon metal cans such as are commonly used for the transporting of alcohol; that he saw a light in the basement of the premises; and that he detected a strong odor of alcohol emanating from the premises.

For the facts alleged to support probable cause, the court is confined to the affidavit which is like a pleading. If the allegations of facts in the affidavit are inadequate, the search warrant cannot be supported. Blackmore on Prohibition, p. 583; United States v. Casino (D. C.) 286 F. 976. Facts sufficient to sustain the conclusion of probable cause must be stated in the affidavit. The facts must be sufficient to create in the mind of a reasonable prudent person the belief that a violation of the National Prohibition Act (27 USCA) was being committed on the premises in question. In Dumbra v. United States, 268 U. S. 435, on page 441, 45 S. Ct. 546, 549, 69 L. Ed. 1032, Mr. Justice Stone, in delivering the opinion of the court, said: "In determining what is probable cause, we are not called upon to determine whether the offense charged has in fact been committed. We are concerned only with the question whether the affiant had reasonable grounds at the time of his affidavit and the issuance of the warrant for the belief that that law was being violated on the premises to be searched; and if the

apparent facts set out in the affidavit are such that a reasonably discreet and prudent man would be led to believe that there was a commission of the offense charged, there is probable cause justifying the issuance of a warrant."

The question presented here is whether probable cause is established by the allegation of facts stated in the affidavit on which the search warrant was based; probable cause cannot be established by what occurred afterwards and outside of the affidavit, or by what was afterwards found on the premises, or by evidence produced afterwards at the hearing. The facts stated in the affidavit in this case to constitute probable cause are that the affiant saw in a warehouse a large number of five-gallon metal cans such as are commonly used for transporting alcohol, that he saw lights in the basement of the premises, and that he detected a strong odor of alcohol emanating from the premises. Would such facts lead a reasonably prudent person to believe that the Prohibition Law was being violated on the premises—this warehouse—which was used as a wholesale store house for groceries, coffee, tea, spices, and drug specialties? The presence of five-gallon metal cans such as are commonly used for the transporting of alcohol in a warehouse of this kind should not lead a reasonably prudent person to believe that the Prohibition Law was being violated there, that illegal liquor was being manufactured, possessed, or sold. It is not alleged that these cans were used only for the transporting of alcohol, nor is it alleged that they were used for the transporting of illegal liquor. There are different forms of alcohol, some of which are legal and commonly possessed and used and sold for medical and commercial purposes. It would, therefore, be expected that alcohol, in some form or other, would be legally possessed and stored for medical and commercial purposes in a warehouse of this kind. That lights were seen in the basement of the warehouse is no ground even for any suspicion; lights might be necessary to carry on the legitimate business of the warehouse. Nor is the allegation that a strong odor of alcohol emanated from the warehouse sufficient, standing alone or with the other allegations, to cause a reasonably prudent person to believe that the Prohibition Law was being violated. There are various forms of alcohol, and the affidavit does not state what was the form or character of the alcohol, and whether used for illegal or legal purposes. We cannot assume from the affidavit that the alcohol was used for illegal purposes. It is the possession, manu-

facture, and sale of illegal and intoxicating liquor for beverage purposes which constitute a violation of the Prohibition Law, and not the possession of alcohol which is not described and may be entirely within the rights of the owner or person in possession of the warehouse or its contents.

"Alcohol is a constituent of all alcoholic beverages, just the same as it is of arnica, glycerine, chloroform, but it is an entirely different thing from whisky or chloroform. Pure alcohol is not a beverage, but a violent irritant." State v. Osmers, 21 Idaho, 18, 120 P. 165, 167; 2 Corpus Juris, p. 1028.

"Where an indictment charges the sale of 'alcohol,' it does not charge the sale of intoxicating liquor. 'Alcohol' is extensively used in the arts, it is employed in medicine as a solvent, in the preparations of tinctures, and by painters in the making of varnishes. The court does not judicially know that it is an intoxicating beverage like whisky, nor that it is in common use for purposes of dissipation, nor even that it is capable of being applied to such a use. A bare charge of selling 'alcohol' discloses no criminal offense. State v. Witt, 39 Ark. 216, 218." 1 Words and Phrases, First Series, page 295.

This warehouse was located in the business section of the city of Wilkes Barre. On one side of the building was painted in large letters, plainly visible, the words, "Nathan Williams, Wholesale Grocer," on another side, "Coffee, Tea, Spices and Drug Specialties and Lilac Tea," and on another side, "Nathan Williams, Grocer's Specialties." The presence of five-gallon metal cans commonly used for transporting alcohol, lights in the basement, and the strong odor of alcohol would not lead a reasonably prudent person, under the circumstances, to believe that the Prohibition Law was being violated. The facts necessary to establish probable cause cannot be tested by any fixed rule of law but can be determined by finding that they are such as to warrant a man of sense, prudence, and caution in believing that an offense against the law is being committed. Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790; Dumbra v. United States, supra.

Counsel for the United States relies upon the case of Feitler et al. v. United States (C. C. A.) 34 F.(2d) 30, in which the search warrant was sustained principally upon the averment in the affidavit that upon the premises were located and concealed intoxicating liquors and property for the manufacture of intoxicating liquors, which were being held

and possessed for beverage purposes in violation of the Prohibition Law; that the affiants detected a strong odor of moonshine whisky emanating from the premises; that during ten days observation they saw motor cars with license plates of other states going to and from the place; and that the affiants saw in the building about one hundred five-gallon cans of the kind bootleggers use for conveying moonshine whisky. This is a different statement of facts to support probable cause, and the facts alleged were sufficient to produce a reasonable inference that a violation of the Prohibition Law was being committed. In the present case, the allegation is that the affiant detected a strong odor of alcohol emanating from the building. There is no allegation that the alcoholic smell indicated moonshine whisky or illegal liquor fit for beverage purposes.

The facts alleged in the affidavit on which the search warrant was based are not sufficient to establish probable cause, as required by the Fourth Amendment to the Constitution of the United States, and section 16 of the Espionage Act, USCA, title 18, § 626, and the search warrant based thereon must, therefore, be quashed, and the evidence obtained thereunder suppressed, and the goods seized by virtue thereof returned to the petitioner, with the exception of one pint bottle one-half full of red whisky, one pint bottle one-eighth full of red whisky, one gallon jug of red whisky, and two ten-gallon kegs of wine.

The petition is sustained, and the rule granted thereon is made absolute, and the search warrant is quashed and the evidence obtained thereunder is suppressed, and the goods seized by virtue thereof is ordered returned to the petitioner, excepting one pint bottle one-half full of red whisky, one pint bottle one-eighth full of red whisky, one gallon jug of red whisky, and two ten-gallon kegs of wine.