Peter T. Farrell, J.
The motions now decided, however styled, are treated as applications for orders suppressing the use in evidence — and directing the return — of property, including papers and personal effects seized in the execution of invalid search warrants (Code Crim. Pro., §§ 813-c to 813-e).[1] Insofar as they seek suppression of the things seized, the motions are granted. The applications for orders directing return of the property are granted as to the articles set forth in the schedules annexed to the respective short-form orders made and entered herewith. As to the remainder of the property taken under the warrants the motions are denied, without prejudice to the right of each moving party to bring on a new motion upon papers showing whether the items not theretofore returned are ‘ ‘ otherwise subject to lawful detention” (Code Crim. Pro., § 813-c) under applicable provisions of State, municipal or Federal law, then in effect.
These motions are decided upon the respective warrants, the supporting affidavits (read collectively) and the credible evidence received upon an evidentiary hearing conducted in accordance with the provisions of an intermediate order of the court. My findings are embodied in the factual statements made in this opinion.
In granting these motions to the extent just indicated I hold (1) that all of the warrants in question were invalid because issued upon affidavits that were patently insufficient in that they failed to inform the issuing Magistrate of the underlying circumstances supporting the affiant’s conclusion that his confidential informants were credible and their information reliable; (2) that the deficiency was not cured by supplemental verbal statements which the officer-applicant made in response to the Magistrate’s questions on the occasions of the applications for the warrants because (a) the statements were not made under oath and (b) were not recorded nor judicially noted and are not a part of the record basis of the warrants. In view of these conclusions, it is unnecessary to pass upon the further issue arising from the Magistrate’s determination of probable cause for belief that some of the individuals possessed dangerous weapons, etc. upon their persons, in their homes or automobiles, *375 upon broad allegations which, in most cases, fail to impute possession of anything specific to any named person in his “ above mentioned premises and automobile(s) ” or anywhere else.[2]
(1) I do not interpret the United States Supreme Court’s preference for searches under warrants issued upon 1 ‘ the informed and deliberate determinations of magistrates empowered to issue warrants ” (Aguilar v. Texas, 378 U. S. 108, 110-111; United States v. Ventresca, 380 U. S. 102, 106-107) as qualifying the well-established rule that a warrant may rest upon hearsay information and need not reflect the direct personal observations of the affiant “ so long as the magistrate is ‘ informed of some of the underlying circumstances ’ supporting the affiant’s conclusions and his belief that any informant involved * # * was ‘ ‘ credible ’ ’ or his information 1 ‘ reliable ” Aguilar v. Texas, supra, at 114 ” (United States v. Ventresca, supra, p. 108). No modification of constitutional standards is involved in the statement that 1 ‘ affidavits for search warrants * * * must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion ’ ’ nor is there any compromise with the propositions that probable cause cannot be made out by purely conclusory affidavits and that “ recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. ’ ’ However, “ where these circumstances are detailed, where reason for crediting the source of the information is given * * * the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner.” (United States v. Ventresca, supra, pp. 108,109; emphasis supplied.) But what the highest court considered “ hypertechnical ” was the Circuit Court’s view that the affidavit was inadequate because the facts were not so detailed as to enable a! reviewing court to single out any possible “ hearsay-upon-hearsay ’ ’ and in shunning such ‘1 an unduly technical and restrictive reading” (pp. 110, 111) the Supreme Court did not lessen the basic necessities.
*376 “ The holding of the * * * majority opinion * * * might be summarized thus: in a doubtful or marginal case a search under a warrant should be sustained; an affidavit for a search warrant may be based on hearsay so long as the magistrate is informed of the underlying circumstances which support the conclusion and belief of the affiant that his informer was credible or his information reliable ” (People v. Rogers, 15 N Y 2d 422, 425; emphasis supplied). “ The ‘underlying circumstance ’ from which the affiant and the issuing officer in Ventresca could have concluded that the informants were credible or their information reliable was the fact that the informants were Government agents whose veracity could with relative assurance be relied upon ” (People v. Montague, 19 N Y 2d 121, 123) or, “ were presumed to be reliable ” (People v. Horowitz, 21 N Y 2d 55, 59). The affidavits in this case set forth no facts upon which the Magistrate could have made an independent determination that the officer’s informants were credible and their information reliable.
All were sworn to the same day, by the same officer, before the same Magistrate and in all but one the affiant stated that he had received recent information from “ a reliable and confidential informant ” (the other assigned it to a “ reliable and confidential source ”) but nowhere did he disclose the fact that the informant was a fellow police officer assigned to investigate the matter and that in the performance of his duty the unidentified informant had ‘ ‘ joined ’ ’ the ‘ ‘ violent organization ’ ’ mentioned, and thus gained direct personal knowledge of the facts abridged in the affidavit. The omission violated the precepts of both the Federal and New York cases[3] and ignored a specific statutory directive that the affidavit “ describe [the] source [and] facts indicating reliability of [the] source and nature of information ” relied upon (Code Crim. Pro., § 797-a; emphasis supplied). The hearing evidence justifies an inference that because the Magistrate considered the affidavits to be insufficient he interrogated the officer further.
(2) The warrants now under review were part of some 20 which the Magistrate was called upon to issue in one day. Some were preferred in the morning, in his chambers, and the others at his home, about 9 o’clock that night. The Judge spent about *377 a half-hour in consideration of the applications on each such occasion. In the initial stage he questioned the affiant about the nature of the organization and thus elicited details not spread out in the affidavits. He inquired about the identity of the ‘ ‘ reliable and confidential informant ’ ’ and the officer then disclosed that actually there were two such informants; that both were police officers operating as “ undercover ” men in the conduct of an official investigation; that they had penetrated the organization by gaining membership therein and that revelation of their names would endanger their lives. The Judge read each affidavit as it was submitted and questioned the affiant at some length about the person against whom the warrant was sought. An Assistant District Attorney was present and took part in what the officer described as the ‘ ‘ conversation ’ ’ between himself, the assistant and the Magistrate but there is no evidence that the assistant’s contributions were under oath and the officer’s uncontradicted and credible testimony was that he was not put under oath at or before the time of the interrogation. After its conclusion he was sworn as to the truth of the averments in the affidavit and the Magistrate thereupon signed the jurat. The proceedings were not recorded, stenographically or otherwise and the Judge made no notes of his own.
(a) Had the affidavits themselves satisfied the Judge of the existence of sufficient grounds for doing so, he could have issued the warrants forthwith (Code Crim. Pro., § 796) but if not, he was only empowered to “ examine, on oath, the person seeking the warrant ” (Code Crim. Pro., § 794; emphasis supplied). In following the course that he did, he may very well have been misled by an authoritative comment to the effect that, as a matter of common judicial knowledge, ‘1 search warrants have in practice usually been issued on affidavits with the Judge making such oral inquiries as he thought appropriate ” (People v. Marshall, 13 N Y 2d 28, 36, supra). But when read in context, it is clear that this judicial utterance was not intended to skirt the constitutional edict that “ no warrants shall issue, but upon probable cause, supported hy oath or affirmation ” (N. Y. Const., art. I, § 12; U. S. Const., 4th Arndt.; emphasis supplied). And since these additional statements were not made under oath, fundamental law forbade the Magistrate to consider them in acting upon the applications for the warrants, even if they had been recorded.
(b) These additional statements were not recorded, although the omission occurred before its significance was pointed up by the majority opinion in People v. Schnitzler (18 N Y 2d 457, 461) and accented in Matter of Sarisohn (21 N Y 2d 36, 42, 43). *378 The District Attorney argues (1) that Sarisohn has no application to search warrants, (2) that Schnitsler merely threw out a suggestion, prospectively, without mandating conformity and (3) in effect, coupled it with absolution, both for the procedural fault and the judicial acceptance of a detective’s bare assurance that his informer was reliable.[4] Obviously, a pretrial settlement of all of the questions in this case is desirable.
If the analogies between eavesdropping and search warrant procedures do not extend to the recording of additional statements made in an application for a search warrant and if Schnitsler does not reach back to affect the omission in this case, the fact remains that the proper course of judicial action was directed by the provisions of section 794 of the Code of Criminal Procedure, in effect at the time when these warrants were issued. •
After providing that the Magistrate “ may, before issuing the warrant, examine, on oath ” the applicant and his witnesses, if any, the statute specifically required — as it still does — that the Judge “ must take the affidavit or deposition of the person seeking the warrant ” (emphasis supplied). In People v. Marshall (13 N Y 2d 28, 35-36, supra), the court decided that the predecessor statute did not oblige the Magistrate to take a separate deposition. It held that, notwithstanding the old section 794 requirement that the Magistrate must take “depositions in writing ”[5] “an affidavit was sufficient * * * provided, of course, that its allegations present proper cause ” (emphasis supplied). It noted that the prescribed form of the affidavit recited ‘ ‘ Proof by affidavit having been made ’ ’ but under the circumstances, was not constrained to refer to the parenthetic “ (or deposition) ” (Code Crim. Pro., § 797). Although the court experienced difficulty in understanding why the procedural scheme involved use of the words “ deposition ” and ‘‘ affidavit ’ ’ interchangeably, there was no obscurity in its concept of a “deposition” — as meaning “something more than a sworn statement prepared elsewhere and handed to a Judge or court but * * # also used in a generic sense to include affidavits ”. In holding that the old section 794 did not require both an affidavit and a deposition the court remarked *379 that the new (present) section 794 had avoided the semantic difficulty “ by requiring the Magistrate to ‘ take the affidavit or deposition of the person seeking the warrant’” (13 N Y 2d 28, 36). But since it had held the affidavits before it sufficient to establish probable cause (p. 34) there was no occasion for it to consider or discuss circumstances under which a Magistrate might conceivably be obliged to take an additional deposition, in deference to the imperative statutory language. I conclude that the statute imposed a duty to do so when, as here, the affidavit was insufficient on its face, if the Magistrate examined the applicant, under oath, and thus elicited statements of fact sufficient to establish probable cause, when taken together with the averments in the otherwise defective affidavit. And, as a legal term, a “deposition” is defined as “usually limited to the testimony of a witness, taken in writing, under oath or affirmation, before some judicial officer, in answer to interrogatories, oral or written ” (26-A C. J. S., Depositions, § 1, p. 287). The 1962 amendment of section 794 dispensed with the necessity that the deposition be subscribed by the party making it. Section 365.40 of the proposed Criminal Procedure Law would require that “ any such examination must be either recorded or summarized on the record by the court. ’ ’[6]
The 1962 amendment was part of the statutory revision thought necessary to “ clarify and modernize ” search warrant procedures, in the wake of Mapp v. Ohio (N. Y. Legis. Annual, 1962, pp. 350, 351). The choice of language suggests that the draftsmen and the members of the Legislature were familiar with the atmosphere in the Federal jurisdiction and in the courts of sister States (while New York had declined to follow the exclusionary rule) and that section 794, as amended, reached a compromise between two widely different points of view, one of which insisted that the affidavit be self-sufficient, on its face, and forbade supplementation by other affidavits or by sworn, oral testimony, whether recorded, written, subscribed or not.6 [7] The other permitted an insufficient affidavit to be supplemented *380 by oral testimony which was not recorded.[8] The middle-position was, ‘1 that there must be a record upon which the reviewing court may determine whether there was proof of any facts before the Magistrate which would support the finding of probable cause ” (Glodowski v. State, 196 Wis. 265, 271 [June, 1928]).
The Glodowski rationale was, that “ it is an anomaly in judicial procedure to attempt to review the judicial act of a Magistrate issuing a search warrant upon a record made up wholly or partially by oral testimony taken in the reviewing court long after the search warrant was issued. Judicial action must be reviewed upon the record made at or before the time that the judicial act was performed. The validity of judicial action cannot be made to depend upon the facts recalled by fallible human memory at a time somewhat removed from that when the judicial determination was made. This record * * * need take no particular form. The record may consist of the sworn complaint, of affidavits, or of sworn testimony taken in shorthand and later filed, or of testimony reduced to longhand and filed, or of a combination of all * * *. The form is immaterial. The essential thing is that proof be reduced to permanent form and made a part of the record, which may be transmitted to the reviewing court.” (pp. 271-272, followed in State v. Ripley, 196 Wis. 288 [June, 1928], and in Mundon v. State (196 Wis. 469 [July, 1928]).
The Indiana court’s restrictive interpretation of a local statute was supported by its conviction that if the additional proof were oral, it was ‘1 doubtful from a practical viewpoint whether it can ever be reproduced with exactitude,” besides which “ the trial court would be confronted with conflicting evidence as to what facts had been adduced in the first instance ” (Bedenarzik v. State, 204 Ind. 517, 522, 523 [March, 1933] ). Later in 1933, the Legislature enacted a statute which provided, in substance, that if other evidence were heard for the purpose of establishing probable cause, it should be reduced to writing and filed with the affidavit for the search warrant but a 1941 amendment eliminated this feature of the warrant procedure, with the result that the law, insofar as probable cause was concerned, became “ the same as it was prior to the 1933 act, and [did] not provide for the hearing of oral evidence upon which to base probable cause ” (Rohlfing v. State, 227 Ind. 619, 623, supra [Oct., 1949]).
The authorities thus far collected existed before our code *381 section 794 was amended in 1962, and the Federal courts were then functioning under the provisions of subdivision (c) of rule 41 of the Federal Rules of Criminal Procedure which provided (in pertinent part) that “ a warrant shall issue only on affidavit sworn to before the judge or commissioner and establishing the grounds for issuing the warrant.” The amended section 794 reflects an awareness of the differences between the authorities, based on local statutes or rule, and a thoughtful decision to reject the extremes and choose a satisfactory middle course of procedure. Both an affidavit and deposition were intended to be required when the affidavit alone was insufficient, and a (then) Judge of the County Court, Suffolk County so concluded within a matter of months after the amendment took effect (People v. Carminati, 236 N. Y. S. 2d 921, 922-923 [Dec. 10, 1962]). In summary, to paraphrase the conclusion reached in Matter of Sarisohn (21 N Y 2d 36, 42, 43, supra) “ the [warrants] in this case were not obtained in accordance with the requirements of the statute” and were, therefore, illegal.
It has been said that “the Fourth Amendment’s policy against unreasonable searches and seizures finds expression in Rule 41 of the Federal Rules of Criminal Procedure ” (United States v. Ventresca 380 U. S. 102, 105, n. 1, supra) and although neither State nor Federal courts have regarded it as binding in State proceedings,[9] the Massachusetts Supreme Court’s perception of the intent behind the adoption of a similarly confining statute involves a realistic outlook, for while it had no doubt that “ the legislative purpose was to make sure that the Commonwealth could demonstrate by a writing that any given search and seizure was reasonable and based upon probable cause ” and that “ the surest way to achieve this purpose is the preservation in the affidavit presented to the magistrate of a statement of the grounds relied upon for issuing the warrant ” so that “ nothing is left to the uncertainty of oral testimony as to what was otherwise stated to the magistrate ” the court remarked, in passing, that “ this method also serves as an anchor to windward and as a guard against surprise in case of some future shift in the rulings of the Supreme Court of the United States ” (Commonwealth v. Monosson, 351 Mass. 327, 330 [Nov., 1966]).
Between 1962, when section 794 was amended, and December 1, 1966, when Schnitsler was decided, the Federal courts had maintained the necessity of totally sufficient affidavits on appli *382 cations for Federal warrants (Rosencranz v. United States, 356 F. 2d 310, 314 [Feb., 1966]) but not in State proceedings (Miller v. Sigler, 353 F. 2d 424, 426 [Dec., 1965], supra) and State courts had, expressly or implicitly, approved supplementation of the affidavit by unrecorded testimony (State v. Sherrick, 98 Ariz. 46 [May, 1965]; Hill v. State, 114 Ga. App. 527 [Oct., 1966]; State v. Titus, 106 N. H. 219, [March, 1965]; State v. Mark, 46 N. J. 262 [Jan., 1966] Commonwealth v. Crawley, 209 Pa. Super. Ct. 70 [Nov., 1966]). Thus, Schmtzler stands with the Wisconsin court (Glodowski v. State, 196 Wis. 265, supra), on the middle ground, by indicating the section 794 need for a permanent, reviewable record.[10]
In another setting, the People would be entitled to the benefit of reasonable doubt about the law (People v. Reed, 276 N. Y. 5, 9) but here they have the right to appeal from the orders made in accordance with this decision (Code Crim. Pro., § 518, subd. 6; § 518-a). The substantial, arguable questions in this case should be tested before — rather than after — a trial which might result in a conviction, reversed on appeal, and a retrial contributing to congestion.

 The grounds upon which a warrant was issued may be “ controverted,” as a matter of right, in the court which issued it, upon return of the warrant and delivery of an inventory (Code Crim. Pro., §§ 802, 805-809). Other procedural devices are discussed in People v. Gatti (16 N Y 2d 251, 253-255).

 The affidavits were prepared and at least some were submitted to the Magistrate by an Assistant District Attorney who had access to the source material, i.e., intelligence communicated by undercover police officers engaged in an official investigation into the persons, matters and things referred to therein. Neither he nor the issuing Magistrate testified on the suppression-hearing. The official status — and hence the reliability — of the informers is a prerequisite of an assessment of the substantive worth of the facts set forth in the affidavit, on information provided by them.

 In addition to those already cited, see People v. Coffey (12 N Y 2d 443, 452 [May, 1963], cert. den. 376 U. S. 916); People v. Marshall (13 N Y 2d 28, 34 [June, 1963]); People v. Santiago (13 N Y 2d 326, 329, 332 [Jan., 1964]); People v. Malinsky (15 N Y 2d 86, 91 [Jan., 1965]); People v. White (16 N Y 2d 270, 274 [Dec., 1965]); People v. Misuraco (16 N Y 2d 542 [May, 1965]); People v. McCall (17 N Y 2d 152, 157-158 [March, 1966]).

 Having read the record and points on appeal, I note that the District Attorney depended on speculative inference that the assurance was given under oath.

 Prior to its amendment (L. 1962, ch. 542, § 3) the statute read: “ The magistrate must, before issuing the warrant, examine, on oath, the complainant and any witnesses lie may produce, and take their depositions in writing, and cause them to be subscribed by the parties making them.”

 The District Attorney has suggested that an “ informal ” examination by the Magistrate would be permitted by the “ under oath or otherwise ” content of subdivision 1 of section 365.40. Apart from the constitutional provision earlier noted (p. 6, ante) an “ oath ” is defined as including an “ affirmation and every other mode authorized by law of attesting to the truth of that which is stated.” (See Proposed Criminal Procedure Law, § 1.20, subd. 19.) Obviously, the “ or otherwise ” means “ every other mode authorized by law.”

 See, e.g., United States v. Casino (286 P. 976, 978 [Feb., 1923]); United States v. Williams (43 F. 2d 184, 186 [Aug., 1930]); People v. Elias (316 Ill. 376 [April, 1925]); Lampkins v. State (205 Ind. 589 [Nov., 1933]); Rohlfing v. State (227 Ind. 619 [Oct., 1949]).

 See, e.g., Sparks v. United States (90 F. 2d 61, 64 [April, 1937]) criticizing Poldo v. United States (55 F. 2d 866 [Feb., 1932]); State v. Doe (227 Iowa 1215 [March, 1940]), following Burtch v. Zeuch (200 Iowa 49 [March, 1925]).

 See, e.g., Miller v. Sigler (353 F. 2d 424, 426) ; State v. Sherrick [98 Ariz. 46, cert, den., 384 U. S. 1022); Sherrick v. Eyman (Federal writ) (389 F. 2d 648, 652); Commonwealth v. Crawley (209 Pa. Super. Ct. 70); State v. Walcott (435 P. 2d 994, 999 [Wash.]).

 Since Schnitzler, the affidavit, exclusively, has been held essential in Sessoms v. State 239 A. 2d 118,121 [Md., Feb., 1968]). The unreeorded-testimonyauthorities have been increased by State v. Lampson 149 N. W. 2d 116, 117, 119, [Iowa, March, 1967]; State v. Oliveri [Iowa, 156 N. W. 2d 688, 692-694 Feb., 1968] and State v. Walcott, [Wash., 435 P. 2d 994, 999 Dec., 1967]). The dissenting opinion favors the Glodowski stand (pp. 1002-1003). In the Federal jurisdiction, see United States v. Sterling (369 F. 2d 799, 802, n. 2 [Dec., 1968]) and United States v. Pinkerman (374 F. 2d 988, 989 [March, 1967]).