346 S.E.2d 762

**STATE of West Virginia**

v.

**Danny Ray ADKINS, Defendant.**

**No. 16251.**

Supreme Court of Appeals of West Virginia.

June 5, 1986.

Concurring and Dissenting in Part June 19, 1986.

the crime" would be found at a particularly described residence in Clarksburg. The factual basis for their belief was: "A confidential informant, who fears for their (sic) life should their (sic) identity be known, observed marijuana inside the afor mentioned (sic) structure and in the controll (sic) of Danny Atkins (sic)."

Harry P. Waddell, Steptoe & Johnson, Clarksburg, for appellant.

Mary Rich Maloy, Asst. Atty. Gen., for appellee.

MILLER, Chief Justice:

Danny Ray Adkins appeals from his felony conviction of possession with intent to deliver a controlled substance, marijuana, W.Va.Code, 60A–4–401(a). His principal contention is that the contraband introduced against him was seized under an invalid search warrant in that the warrant affidavit failed to establish probable cause.[1]

On April 6, 1983, an investigator employed by the City of Clarksburg and a sergeant of the Harrison County Sheriff's Department presented a sworn affidavit and complaint for a search warrant to a Harrison County magistrate. They alleged that on April 6, 1983, and prior to making their complaint, the defendant "Danny Atkins" (sic) did "[h]ave in his possession with intent to deliver marijuana, a schedule 1 controlled substance over 15 gms." and that "Marijuana and any other evidence of

## I.

### RIGHT TO CHALLENGE THE SEARCH

The State argues that the defendant does not have the right to challenge the search and seizure because he had no legitimate expectation of privacy in the premises from which the contraband was seized.[2] The search was made of a house rented to the defendant's girlfriend, where he frequently stayed. The State relies on *State v. Tadder*, 173 W.Va. 187, 313 S.E.2d 667 (1984), where we held that a passenger in a truck which he did not own had no legitimate expectation of privacy in the truck. Consequently, he had no constitutional basis to object to a search of the truck. We relied on *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), one of several decisions by the United States Supreme Court relating to a defendant's right to challenge a search and seizure. *See also Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).

These opinions have had the effect of narrowing the holding of *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), *overruled on other*

---

1. Mr. Adkins also contends the trial court erred in denying his motion to disclose the identity of the informant, in admitting evidence of collateral crimes, and in denying his motion for a mistrial on the same ground. As we have found the defendant's primary assignment of error to be meritorious, we need not reach these issues.

2. The constitutional limitations on searches and seizures are found in the Fourth Amendment to the United States Constitution and in Article III, Section 6 of the West Virginia Constitution, which are almost identical. The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not

be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Article III, Section 6 of the West Virginia Constitution states:

"The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated. No warrant shall issue except upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, or the person or thing to be seized."

grounds, *United States v. Salvucci, supra*, which had accorded to a guest of the apartment's owner the right to challenge the search of the apartment. The owner had let him temporarily use the apartment. We recognized the principle of *Jones* in *Spaulding v. Warden, West Virginia State Penitentiary*, 158 W.Va. 557, 212 S.E.2d 619 (1975), but declined to apply it to the search of an automobile "where the defendant had no interest in the vehicle and was not present when it was searched." Syllabus Point 2, in part.[3]

In *Jones*, the Supreme Court also accorded "automatic standing"' to challenge the validity of a search and seizure to defendants charged with an offense involving possession of the seized evidence, which in the case of *Jones* was narcotics. This was premised on the theory that if the defendant had to acknowledge a possessory interest in the seized contraband to claim standing under the Fourth Amendment to challenge the validity of the search and seizure, he would be incriminating himself under the Fifth Amendment.[4] *See Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973).

However, in *Salvucci* the Supreme Court abolished this automatic standing rule, concluding that "defendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated," 448 U.S. at 85, 100 S.Ct. at 2549, 65 L.Ed.2d at 623, and summarized the nature of the inquiry as follows:

"While property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, see *Rakas*, [439 U.S. at 144 n. 12, 99 S.Ct. at 431 n. 12, 58 L.Ed.2d at 401 n. 12], property rights are neither the beginning nor the end of this Court's inquiry. In *Rakas*, this Court held that an illegal search only violates the rights of those who have 'a legitimate expectation of privacy in the invaded place.' [439 U.S. at 143, 99 S.Ct. at 430, 58 L.Ed.2d at 401.]"

Earlier in *Rakas*, the Supreme Court, although reaffirming *Jones* on its facts, rejected a second holding in *Jones* which had accorded automatic standing to "anyone legitimately on the premises where a search occurs...." 362 U.S. at 267, 80 S.Ct. at 734, 4 L.Ed.2d at 706. By way of example, the *Rakas* Court indicated that a casual visitor to another person's kitchen at the time of the search would not have a legitimate expectation of privacy in the other person's basement. Moreover, a casual visitor, who walked into another person's home just before the search and left shortly thereafter, could not object to the legality of the search. 439 U.S. at 142, 99 S.Ct. at 429–30, 58 L.Ed.2d at 400.[5]

We believe that under the foregoing United States Supreme Court cases a defendant who is more than a casual visitor to an apartment or dwelling in which illegal drugs have been seized has the right under the Fourth Amendment to the United States Constitution and Article III, Section 6 of the West Virginia Constitution to challenge the search and seizure of the illegal drugs which he is accused of possessing.

---

3. The entire Syllabus Point 2 of *Spaulding* is: "A defendant in a criminal proceeding has no standing to object to the search by a police officer of an automobile where consent to the search was given by the owner, and where the defendant had no interest in it and was not present when it was searched."

4. In *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Supreme Court concluded that evidence given by the defendant at a suppression hearing could not be used by the prosecution as a part of its substantive evidence at trial. This holding was utilized by the Supreme Court in *United States v. Salvucci, supra*, as a part of its rationale for overruling the automatic standing rule of *Jones*.

5. *Rakas*, 439 U.S. at 141–42, 99 S.Ct. at 430, 58 L.Ed.2d at 400–01, stated that an individual can have a legally sufficient interest to challenge a search in an area other than his home:

"*We think ... that a person can have a legally sufficient interest in a place other than his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place....* In defining the scope of that interest, we adhere to the view ... that arcane distinctions developed in property and tort law between guests, licensees, invitees, and the like, ought not to control...." (Emphasis supplied; citations omitted).

Other courts have arrived at much the same conclusion. *E.g., United States v. Lyons,* 706 F.2d 321 (D.C.Cir.1983); *United States v. Perez,* 700 F.2d 1232 (8th Cir. 1983); *United States v. Pollock,* 726 F.2d 1456 (9th Cir.1984); *People v. Hamilton,* 168 Cal.App.3d 1058, 214 Cal.Rptr. 596 (1985); *State v. Whitehead,* 229 Kan. 133, 622 P.2d 665 (1981); *People v. Wagner,* 104 Mich.App. 169, 304 N.W.2d 517 (1981); *State v. Isom,* 196 Mont. 330, 641 P.2d 417 (1982).

We think Mr. Adkins meets this test. As we have previously stated, the evidence was seized from a house rented by the defendant's girlfriend. He had access to all parts of the residence and was present when the police searched the home and seized the evidence. Although the defendant lived in Charleston with his mother, he had stayed with his girlfriend in her house on and off for six years and was there as long as two and three weeks at a time. From these facts, it is clear that he was more than a casual visitor to the residence and, therefore, had a legitimate expectation of privacy in the residence while he was there. The facts in the present case are rather similar to those in *State v. Whitehead, supra,* where the Kansas Supreme Court found standing based on the fact that the defendant lived with his girlfriend "on an irregular basis." 229 Kan. at 133, 622 P.2d at 667.

## II.

## THE FOUR CORNERS REQUIREMENT

The defendant contends the trial court erred in considering at the suppression hearing facts other than those set out in the affidavit in order to determine if there was sufficient probable cause for the issuance of the search warrant. At the suppression hearing, testimony was taken from the magistrate who had issued the search warrant and from one of the affiant police officers. The suppression hearing occurred some two and one-half months after the issuance of the search warrant. The magistrate testified that, in addition to the search warrant affidavit, he questioned the affiant police officers to determine whether the confidential informant was reliable before issuing the challenged search warrant. He did not place the officers under oath. One of the affiant police officers confirmed the magistrate's testimony.

The officers' testimony was not in any manner contemporaneously recorded and incorporated by reference into the search warrant affidavit. The trial court judge concluded that probable cause had existed for the issuance of the search warrant based on the affidavit and the testimony of the magistrate and one of the affiant police officers.

The question presented is whether it is proper for a court to look outside the "four corners" of a search warrant affidavit and consider at a suppression hearing testimony that was given to the magistrate at the time the warrant was issued in order to determine if there was adequate probable cause to issue the warrant. We intimated our answer to this question in *State v. White,* 167 W.Va. 374, 380, 280 S.E.2d 114, 119 (1981), where we discussed in footnote 3 the impact of Rule 41(c) of the West Virginia Rules of Criminal Procedure (W.Va.R.Cr.P.):

> "We do not reach, and therefore do not decide, the question of whether a warrant that is *insufficient* on its face may be upheld by subsequent testimony about information actually given the issuing judge but not contained in the affidavit or warrant. We note, however, that this clearly will be unacceptable after October of this year when the new W.Va. Rules of Criminal Procedure, Rule 41(c) takes effect. That rule states that any information that the issuing judicial officer finds important to his decision to issue a search warrant must be taken under oath and incorporated into the affidavit. As a matter of common sense and judicial efficiency, this is certainly the better practice." (Emphasis in original).

Rule 41(c), W.Va.R.Cr.P., which became effective on October 1, 1981, controls the search warrant in this case since it was issued on April 6, 1983. Rule 41(c) enables a magistrate or judge to flesh out an affidavit or warrant by examining "under oath

the affiant and any witnesses he may produce, provided that such proceeding shall be taken down by a court reporter or recording equipment and made part of the affidavit." [6]

Our Rule 41(c) is substantially identical to Rule 41(c) of the Federal Rules of Criminal Procedure, as amended in 1972. The federal courts have generally held that the determination of probable cause for issuance of a search warrant must be based solely on the facts contained within the four corners of the affidavit. Consequently, subsequent testimony from the affiant or the judicial official who issued the warrant cannot be considered in determining whether a warrant is valid. *United States v. Sellers*, 520 F.2d 1281 (4th Cir.1975), *rev'd on other grounds*, 424 U.S. 961, 96 S.Ct. 1453, 47 L.Ed.2d 728 (1976); *United States v. Acosta*, 501 F.2d 1330 (5th Cir. 1974), *modified*, 509 F.2d 539, *cert. denied*, 423 U.S. 891, 96 S.Ct. 188, 46 L.Ed.2d 122 (1975); *United States v. Mendel*, 578 F.2d 668 (7th Cir.1978), *cert. denied*, 439 U.S. 964, 99 S.Ct. 450, 58 L.Ed.2d 422 (1978); *United States v. Rubio*, 727 F.2d 786 (9th Cir.1983); *United States v. Hittle*, 575 F.2d 799 (10th Cir.1978); Annot., 24 A.L.R.Fed. 107 (1975).[7] The policy behind Rule 41(c), as commonly expressed, is reflected in this passage from *United States v. Hittle*, 575 F.2d at 802:

"The underlying rationale of the [1972] amendment to Rule 41(c) is important, and the note to the amendment is instructive: 'If testimony is taken it must be recorded, transcribed, and made part of the affidavit or affidavits. This is to insure an adequate basis for determining the sufficiency of the evidentiary grounds for the issuance of the search warrant if that question should later arise.' Fed.R.Crim.P. 41(c).

"It is apparent the reason for adopting this procedural safeguard is to assure that the constitutional rights involved are adequately protected. The probable cause requirement would be significantly weakened if a court can rely on the recollection of those concerned to support a probable cause finding long after the search warrant has been issued. *See* Justice Brennan and Justice Marshall's dissent in *Christofferson v. Washington*, 393 U.S. 1090, 89 S.Ct. 855, 21 L.Ed.2d 783, upon a denial of certiorari."

*See* 2 W. LaFave, Search and Seizure § 4.3(b) (1978).[8]

---

**6.** The pertinent part of Rule 41(c), W.Va.R.Cr.P., provides:

"A warrant shall issue only on an affidavit or affidavits sworn to before the magistrate or a judge of the circuit court and establishing the grounds for issuing the warrant. If the magistrate or circuit judge is satisfied that grounds for the application exist, or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property and person to be seized and naming or describing the person or place to be searched. The finding of probable cause may be based upon hearsay evidence in whole or in part. Before ruling on a request for a warrant the magistrate or circuit judge may require the affiant to appear personally and may examine under oath the affiant and any witnesses he may produce, *provided that such proceeding shall be taken down by a court reporter or recording equipment and made part of the affidavit.*" (Emphasis added).

**7.** Even before the 1972 amendment to the federal rule providing that if testimony is taken it must be recorded, there was substantial federal authority for the proposition that oral statements to a magistrate could not be utilized to cure an otherwise defective search warrant affidavit. The Fifth Circuit in *United States v. Acosta*, 501 F.2d at 1333 n. 1, compiled authority from seven circuits following that rule: *See Rosencranz v. United States*, 356 F.2d 310 (1st Cir.1966); *United States v. Freeman*, 358 F.2d 459 (2d Cir.), *cert. denied*, 385 U.S. 882, 87 S.Ct. 168, 17 L.Ed.2d 109 (1966); *United States v. Sterling*, 369 F.2d 799 (3rd Cir.1966); *United States v. Cobb*, 432 F.2d 716 (4th Cir.1970); *United States v. Melvin*, 419 F.2d 136 (4th Cir. 1969); *United States v. Pinkerman*, 374 F.2d 988 (4th Cir.1967); *United States v. Hatcher*, 473 F.2d 321 (6th Cir.1973); *United States v. Noreikis*, 481 F.2d 1177 (7th Cir.1973), *cert. denied*, 415 U.S. 904, 94 S.Ct. 1398, 39 L.Ed.2d 461 (1974); *United States v. Bailey*, 458 F.2d 408 (9th Cir. 1972); *United States v. Anderson*, 453 F.2d 174 (9th Cir.1971); *see also Poldo v. United States*, 55 F.2d 866 (9th Cir.1932).

**8.** In view of the requirements of Rule 41, W.Va. R.Cr.P., we need not determine whether the "four corners" requirement is constitutionally mandated. An excellent article on this subject by Professor Patrick McGinley entitled *The "Four Corners" Requirement: A Constitutional Prerequisite To Search Warrant Validity* can be found in 31 Okla.L.Rev. 289 (1978).

It also appears that a majority of state courts which have considered the question, follow the rule that search warrants may be issued only upon affidavit and that the affidavit cannot be supplemented or bolstered by subsequent testimony at a suppression hearing. *E.g., State v. White,* 707 P.2d 271 (Alaska App.1985); *People v. Brethauer,* 174 Colo. 29, 482 P.2d 369 (1971) (En Banc); *Blue v. State,* 441 So.2d 165, 167 n. 1 (Fla.App.1983); *State v. Daniel,* 373 So.2d 149 (La.1979); *Commonwealth v. Simmons,* 450 Pa. 624, 626, 301 A.2d 819, 820 (1973); *State v. Appleton,* 297 A.2d 363, 367 (Me.1972); *State v. Hendrickson,* 701 P.2d 1368 (Mont.1985); *State v. Smith,* 281 N.W.2d 430 (S.D.1979); *Hall v. State,* 394 S.W.2d 659 (Tex.Crim.App. 1965); *contra State v. Jansen,* 15 Wash. App. 348, 549 P.2d 32 (1976).

▮ Thus, we conclude that under Rule 41(c), W.Va.R.Cr.P., it is improper for a circuit court to permit testimony at a suppression hearing concerning information not contained in the search warrant affidavit to bolster the sufficiency of the affidavit unless such information had been contemporaneously recorded at the time the warrant was issued and incorporated by reference into the search warrant affidavit.

▮ An additional flaw is found with the suppression hearing testimony in this case. It is undisputed that the police officers were not under oath when they gave information about the reliability of the informant to the magistrate. Both the Fourth Amendment to the United States Constitution and Article III, Section 6 of our Constitution provide that no warrant shall issue except upon probable cause supported by oath or affirmation.[9] There is virtual unanimity that a warrant may not issue on unsworn testimony, as indicated in *Frazier v. Roberts,* 441 F.2d 1224, 1227 (8th Cir. 1971):

9. *See* note 2, *supra,* as to the text of these constitutional provisions.

10. The United States Supreme Court summarized this test in *Massachusetts v. Upton,* 466 U.S. 727, 730, 104 S.Ct. 2085, 2087, 80 L.Ed.2d 721, 725–26 (1984):

"Lower federal courts on the point are rare, since most searches in federal criminal cases are conducted under rule 41 of the Federal Rules of Criminal Procedure. The nearly unanimous view is that the Fourth Amendment requires that only information related to the magistrate on Oath or affirmation is competent upon which to base a finding of probable cause; that unsworn oral statements may not form a basis for that decision." (Footnotes omitted; citations omitted).

*Accord United States v. Sellers,* 520 F.2d at 1282 n. 1; *Tabasko v. Barton,* 472 F.2d 871 (6th Cir.1972), *cert. denied,* 412 U.S. 908, 93 S.Ct. 2288, 36 L.Ed.2d 974 (1973) (relying on text of Fourth Amendment); *Lunsford v. State,* 262 Ark. 1, 552 S.W.2d 646 (1977); *State ex rel. Townsend v. District Court,* 168 Mont. 357, 363, 543 P.2d 193, 196 (1975); *State v. Schmeets,* 278 N.W.2d 401 (N.D.1979); *State v. Shepcaro,* 45 Ohio App.2d 293, 344 N.E.2d 352 (1975). We reached the same conclusion in *State ex rel. Lewis v. Warth,* 131 W.Va. 437, 440, 48 S.E.2d 6, 8 (1948), where we held that a search warrant issued on the unsworn motion of the prosecutor was invalid because it was not "made under oath."

### III.

### VALIDITY OF SEARCH WARRANT

With regard to the question of whether the search warrant affidavit established probable cause to issue the search warrant, the State relies heavily on *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), where the United States Supreme Court abandoned the two-prong test for determining the validity of an affidavit for a search warrant. This test had been developed in *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723, 729 (1964), and was supplemented in *Spinelli v. United States,* 393 U.S. 410, 415–16, 89 S.Ct. 584, 588–89, 21 L.Ed.2d 637, 643–44 (1969).[10]

"Prior to *Gates,* the Fourth Amendment was understood by many courts to require strict satisfaction of a 'two-pronged test' whenever an affidavit supporting the issuance of a search warrant relies on an informant's tip. It was thought that the affidavit, first, must

It is beneficial to briefly trace the major United States Supreme Court cases dealing with the sufficiency of the information contained in a search warrant affidavit. Even prior to *Aguilar*, a warrant could not be issued upon the affiant's purely conclusory affidavit that probable cause existed. In *Nathanson v. United States*, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933), the warrant was held invalid because it was based solely on the customs agent's sworn statement that "he has cause to suspect and does believe" that illegal liquor could be found at a certain location.[11] The Supreme Court said the warrant failed because "[i]t went upon a mere affirmation of suspicion and belief without any statement of adequate supporting facts." 290 U.S. at 46, 54 S.Ct. at 13, 78 L.Ed. at 161. Likewise, in *Giordenello v. United States*, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958), the Supreme Court held the affidavit was defective because it contained "no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein." 357 U.S. at 486, 78 S.Ct. at 1250, 2 L.Ed.2d at 1510.

Hearsay was permitted to serve as the basis for a warrant in *Jones v. United States*, 362 U.S. at 269, 80 S.Ct. at 735, 4 L.Ed.2d at 707, "so long as a substantial basis for crediting the hearsay is presented." In that case the affiant-detective stated he had received information from an undisclosed informant regarding a supply of narcotics. He specified that the informant had firsthand knowledge, having purchased drugs from the suspect on many occasions, and that the informant had given the affiant correct information in the past. *See also Rugendorf v. United States*, 376

U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964).

It was in an effort to further refine how hearsay involving an informant's tip to show probable cause should be evaluated that the Supreme Court fashioned the rule in *Aguilar*, 378 U.S. at 114–15, 84 S.Ct. at 1514, 12 L.Ed.2d at 729:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant ... the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed ... was 'credible' or his information 'reliable.' Otherwise, 'the inferences from the facts which lead to the complaint' will be drawn not 'by a neutral and detached magistrate,' as the Constitution requires, but instead, by a police officer 'engaged in the often competitive enterprise of ferreting out crime,' ... or, as in this case, by an unidentified informant." (Citations and footnotes omitted).

Consequently, under *Aguilar* the search warrant affidavit must (1) show the informant's "basis of knowledge" and (2) must contain information so the magistrate can determine the informant's veracity by either showing (a) the informant is credible or (b) his information is otherwise reliable through some independent informant's corroboration such as police investigation. Thus, the "basis of knowledge" and the "veracity" became the two-prong test. *See*

establish the 'basis of knowledge' of the informant—the particular means by which he came by the information given in his report; and, second, that it must provide facts establishing either the general 'veracity' of the informant or the specific 'reliability' of his report in the particular case."

11. In *State v. Greer,* 130 W.Va. 159, 42 S.E.2d 719 (1947), the Court under our Constitution also invalidated a search warrant based on mere suspicion. The sole Syllabus states:

"A search warrant based upon a statement in a complaint under oath that affiant 'has reasonable and just cause to suspect, and does

suspect' that certain stolen property is concealed in the premises described, is not issued upon probable cause as is required by Section 6 of Article III of our Constitution and is therefore void."

The *Greer* Court also found the search warrant invalid because it did not particularly describe the property to be seized and went on to state that "[t]he property to be seized must be described within the warrant itself or within the sworn complaint expressly made a part of the warrant by direct reference thereto." 130 W.Va. at 164–65, 42 S.E.2d at 723.

Moylan, *Hearsay and Probable Cause: An Aguilar and Spinelli Primer*, 25 Mercer L.Rev. 741 (1974).

In *Spinelli,* the Supreme Court suggested that deficiencies in each prong might be shored up with corroborating information. The "veracity" prong could be satisfied if the police verified a part of the informant's story by independent investigation. This would tend to lend credence to the informant's whole story. It would be "apparent that the informant had not been fabricating his report out of whole cloth." 393 U.S. at 417, 89 S.Ct. at 590, 21 L.Ed.2d at 644.

The "basis of knowledge" prong, according to *Spinelli,* could be met by a showing that the informant provided so much detail as to indicate he must be speaking from firsthand knowledge and not just passing on rumors:

"In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor calculating in the underworld or an accusation based merely on an individual's general reputation." 393 U.S. at 416, 89 S.Ct. at 589, 21 L.Ed.2d at 644.

■■■ The veracity or credibility of hearsay information which the warrant affidavit is reciting can also be evaluated on a scale that varies with the type of informant. Where a police officer affiant is reciting information obtained from a fellow police officer, it is ordinarily not necessary to detail information with regard to their veracity. *See, e.g., Whiteley v. Warden,* 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306, 313 (1971) (credibility of police officer); *United States v. Ventresca,* 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684, 690 (1965) (credibility of IRS investigator). The same is true of hearsay information obtained from victims or a citizen observer by the affidavit affiant. *See, e.g., United States v. Bell,* 457 F.2d 1231 (5th Cir.1972); *Edmondson v. United · States,* 402 F.2d 809 (10th Cir.1968) (credibility of eyewitnesses presumed); *People v. Hester,* 39 Ill.2d 489, 514, 237 N.E.2d 466, 481 (1968) (credibility of ordinary citizen presumed); *see generally* Moylan, *supra* at 761–63; 1 W. LaFave, Search and Seizure § 3.3 (1978).

Because of the varying factual patterns that exist with regard to how information is obtained that serves the basis for the search warrant affidavit, the rules became rather complex. It was this complexity that the Supreme Court in *Gates* sought to reduce by a return to the totality of the circumstances approach. It acknowledged that the two-pronged test involving the informant's basis of knowledge and his reliability and veracity "are all highly relevant in determining the value of his report." 462 U.S. at 230, 103 S.Ct. at 2327, 76 L.Ed.2d at 543.

*Gates* went on to say "that these elements should [not] be understood as entirely separate and independent requirements.... [T]hey should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." 462 U.S. at 230, 103 S.Ct. at 2327–28, 76 L.Ed.2d at 543. Furthermore, the Supreme Court took pains to emphasize in *Gates,* 462 U.S. at 239, 103 S.Ct. at 2332, 76 L.Ed.2d at 548–49, that the totality rule was not meant to validate "bare bones" affidavits:

"A sworn statement of an affiant that 'he has cause to suspect and does believe' that liquor illegally brought into the United States is located on certain premises will not do. *Nathanson v. United States,* 290 U.S. 41, 78 L.Ed. 159, 54 S.Ct. 11 (1933). An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause, and the wholly conclusory statement at issue in *Nathanson* failed to meet this requirement. An officer's statement that '[a]ffiants have received reliable information from a credible person and do believe' that heroin is stored in a home, is likewise inadequate. *Aguilar v. Texas,* 378 U.S. 108, 12 L.Ed.2d

723, 84 S.Ct. 1509 (1964). As in *Nathanson*, this is a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause. *Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.* In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued." (Emphasis added).

It recognized the acceptability of hearsay information, but stressed "the value of corroboration of details of an informant's tip by independent police work," 462 U.S. at 241, 103 S.Ct. at 2334, 76 L.Ed.2d at 550, and cited from *Jones v. United States*, 362 U.S. at 269, 80 S.Ct. at 735, 4 L.Ed.2d at 707:

"[W]e held that an affidavit relying on hearsay 'is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented.' ... Likewise, we recognized the probative value of corroborative efforts of police officials in *Aguilar*—the source of the 'two-pronged test'—by observing that if the police had made some effort to corroborate the informant's report at issue, 'an entirely different case' would have been presented." 462 U.S. at 241–42, 103 S.Ct. at 2334, 76 L.Ed.2d at 550–51.[12]

The warrant upheld in *Gates* involved an affidavit partly based upon hearsay information—an anonymous informant's letter—coupled with further facts obtained through police investigation which tended to corroborate some of the information contained in the letter. The police received an anonymous letter accusing the defendant Lance Gates and his wife of selling drugs and predicting that in early May they would make a trip to Florida and drive back with a trunk full of contraband. The letter outlined that the wife, Susan Gates, would drive from their identified condominium in Chicago to Florida, leave their car to be loaded with drugs, and fly back. Mr. Gates would fly to Florida in a few days and drive their car back.

A police officer investigated and confirmed the address given for the Gates and obtained information from a police officer assigned to the O'Hare Airport that an "L. Gates" was scheduled to depart on May 5 on an Eastern Airlines flight to West Palm Beach, Florida. This officer contacted drug enforcement agents who reported that Mr. Gates had boarded the flight. Other agents in Florida saw him arrive and go to a room in a Holiday Inn registered to a Susan Gates. He and an unidentified woman (Susan) left the motel the next morning driving a car with Illinois license plates registered to Mr. Gates and were arrested when they arrived home. Approximately 350 pounds of marijuana were found in the trunk of the car.

Not surprisingly, the *Gates* court concluded that the affidavit information was sufficiently corroborated by the police investigation of the details of the unknown informant's letter and was a proper basis for the issuance of the search warrant.

Our search and seizure cases which involve the question of whether the affidavit for the search warrant is sufficient factually to supply probable cause for the issuance of the warrant are not very illuminating. In only one case after the *Aguilar-Spinelli* standard was established was this test discussed. *See State v. Dudick,*

---

12. In acknowledgment of the complex variables that underlie the probable cause determination, the United States Supreme Court said in note 11 of *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548:

"Whether the allegations submitted to the magistrate in *Spinelli* would, under the view we now take, have supported a finding of probable cause, we think it would not be profitable to decide. There are so many variables in the probable-cause equation that one determination will seldom be a useful 'precedent' for another. Suffice it to say that while we in no way abandon *Spinelli's* concern for the trustworthiness of informers and for the principle that it is the magistrate who must ultimately make a finding of probable cause, we reject the rigid categorization suggested by some of its language."

158 W.Va. 629, 213 S.E.2d 458 (1975).[13] In several cases prior to the adoption of Rule 41(c), W.Va.R.Cr.P., we permitted the information contained in the affidavit to be supplemented by evidence introduced at the suppression hearing. *E.g., State v. Hall,* 171 W.Va. 212, 298 S.E.2d 246 (1982); *State v. Walls,* 170 W.Va. 419, 294 S.E.2d 272 (1982). As we have earlier noted, Rule 41(c) prohibits supplementing the search warrant affidavit with information derived from a subsequent suppression hearing on the search warrant. Several of our cases have settled the sufficiency question by citing Syllabus Point 1 of *State v. Stone,* 165 W.Va. 266, 268 S.E.2d 50 (1980), which did not refer to *Aguilar* or *Spinelli:*

> "To constitute probable cause for the issuance of a search warrant, the affiant must set forth facts indicating the existence of criminal activities which would justify a search and further, if there is an unnamed informant, sufficient facts must be set forth demonstrating that the information obtained from the unnamed informant is reliable."

*See, e.g., State v. Hall, supra; State v. Wotring,* 167 W.Va. 104, 279 S.E.2d 182 (1981).

Perhaps of more consequence than the lack of any real analysis of the *Aguilar-Spinelli* standard is the approach taken in Syllabus Point 1 of *State v. White,* 167 W.Va. 374, 280 S.E.2d 114 (1981), where again without reference to *Aguilar* or *Spinelli,* we said: "A valid search warrant may issue upon an averment that an unnamed informant was an eyewitness to criminal activities conducted on the premises described in the warrant." *See also* Syllabus Point 3, *State v. Walls, supra.*

*White* relied substantially on *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), a plurality opinion, in which because of Justice White's concurrence as to one part of a three-part opinion, the Supreme Court reversed the court of appeals holding that the search warrant affidavit was insufficient. The issue in *Harris* which gave birth to Syllabus Point 1 of *White* was joined in by only four of the justices and was discussed in Part I of *Harris.* It dealt with the fact that the affidavit recited that the affiant had an informant whom he considered to be "prudent" and who gave him information about the sale of illicit whiskey on the defendant's premises which the informant had personally observed.[14] However, there was nothing in the warrant affidavit to imply that the informant was giving truthful information, i.e., that he was credible under this prong of the *Aguilar-Spinelli* standard. The four justices in *Harris* found that the specific details provided by the informant as an eyewitness, coupled with the affiant's own information resulting from his independent investigation which was set out in the affidavit,[15] corrob-

---

**13.** The search warrant in *Dudick,* however, was found defective on the basis that the magistrate was an agent of the prosecution and exercised no independent evaluation.

**14.** The affidavit recited this information given by the informant:

> " 'This date, I have received information from a person who fears for their [sic] life and property should their name be revealed. I have interviewed this person, found this person to be a prudent person, and have, under a sworn verbal statement, gained the following information: This person has personal knowledge of and has purchased illicit whiskey from within the residence described, for a period of more than 2 years, and most recently within the past 2 weeks, has knowledge of a person who purchased illicit whiskey within the past two days from the house, has personal knowledge that the illicit whiskey is consumed by purchasers in the outbuilding

known as and utilized as the "dance hall," and has seen Roosevelt Harris go to the other outbuilding, located about 50 yards from the residence, on numerous occasions, to obtain the whiskey for this person and other persons.' " 403 U.S. at 575–76, 91 S.Ct. at 2078, 29 L.Ed.2d at 729.

**15.** The affiant was a federal tax investigator and supplied this information in the warrant affidavit from his own investigation:

> " 'Roosevelt Harris has had a reputation with me for over 4 years as being a trafficker of nontaxpaid distilled spirits, and over this period I have received numerous information [sic] from all types of persons as to his activities. Constable Howard Johnson located a sizeable stash of illicit whiskey in an abandoned house under Harris' control during this period of time.' " 403 U.S. at 575, 91 S.Ct. at 2078, 29 L.Ed.2d at 729.

orated the informant's information and was sufficient to constitute probable cause.

It is doubtful that *Harris* can be read to support the rule stated in Syllabus Point 1 of *White*.[16] However, this issue is subsumed in the liberalization occasioned by the totality rule developed in *Gates*.

As we have previously pointed out, *Gates* does not sanction a bare bones affidavit nor does it approve an affidavit based on hearsay unless there is "a substantial basis for crediting the hearsay" and *Gates* recognizes "the probative value of corroborative efforts of police officials ... to corroborate the informant's report at issue." 462 U.S. at 241–42, 103 S.Ct. at 2334, 76 L.Ed.2d at 550–51.

■ We, therefore, conclude that under the Fourth Amendment to the United States Constitution and Article III, Section 6 of the West Virginia Constitution, the validity of an affidavit for a search warrant is to be judged by the totality of the information contained in it. Under this rule, a conclusory affidavit is not acceptable nor is an affidavit based on hearsay acceptable unless there is a substantial basis for crediting the hearsay set out in the affidavit which can include the corroborative efforts of police officers.

· ■ The factual basis for the affidavit in this case was solely based on an undisclosed confidential informant whose only fact statement as reported by the officer making the affidavit was that he had "observed marijuana inside the af ormentioned (sic) structure and in the controll (sic) of Danny Atkins (sic)." The warrant affidavit lacks the date when the informant observed the drugs, which creates a staleness problem that has caused courts to find some search warrant affidavits to be deficient.[17] Finally, the fact statement in the warrant affidavit provides absolutely nothing that supplements the informant's basis

of knowledge to lend credence to his conclusory assertion much less anything about his reliability. There are no facts in the affidavit indicating that police investigation had tended to corroborate the informant's tip such as existed in the *Gates'* affidavit.

We have not found nor have the parties cited any case where such a meager affidavit has been upheld after *Gates*. The affidavit in *Massachusetts v. Upton*, 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984), a per curiam decision which followed *Gates*, contained a wealth of detail from a citizen informant some of which was corroborated by the police officer affiant. Consequently, the warrant was found to be proper. We have found several post-*Gates* decisions rejecting what are termed "conclusory affidavits" that contain considerably more detail than the one involved in the present case. *See, e.g., United States v. Little*, 735 F.2d 1049 (8th Cir.1984); *Higgason v. Superior Court*, 170 Cal.App.3d 929, 216 Cal. Rptr. 817 (1985); *State v. Wood*, 457 So.2d 206 (La.App.1984); *Commonwealth v. Honneus*, 390 Mass. 136, 453 N.E.2d 1053 (1983); *State v. Thompson*, 369 N.W.2d 363 (N.D.1985); *State v. Wise*, 72 Or.App. 58, 695 P.2d 68 (1985); *Adkins v. State*, 675 S.W.2d 604 (Tex.App.1984). We, therefore, conclude that the warrant affidavit is defective under the *Gates'* "totality rule."

## IV.

## LEON'S GOOD FAITH EXCEPTION

We acknowledge that the case of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), has created what is termed a "good faith" exception which may salvage an otherwise defective warrant. It is based on the premise that the exclusion of evidence under the Fourth Amendment is not warranted where a police officer acts in good faith reliance on the warrant issued by the magistrate.

---

**16.** We confine *White* to its facts which proceeded on the basis that the informer was a citizen. The affidavit for the warrant alleged he was "reliable" and contained the date on which he observed the drug transaction which was four days before the officer made his affidavit for the warrant before the magistrate.

**17.** *E.g., Orr v. State*, 382 So.2d 860 (Fla.App. 1980); *Commonwealth v. Tolbert*, 492 Pa. 576, 424 A.2d 1342 (1981); *State v. Winborne*, 273 S.C. 62, 254 S.E.2d 297 (1979); Annot., 100 A.L.R.2d 525 (1965); 1 W. LaFave, Search & Seizure § 3.7(b) (1978).

*Leon* states that this good faith exception "is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances ... including whether the warrant application had previously been rejected by a different magistrate ... may be considered." 468 U.S. at 922–23, n. 23, 104 S.Ct. at 3421 n.23, 82 L.Ed.2d at 698 n. 23. The Supreme Court in *Leon* also pointed out that "it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." 468 U.S. at 922–23, 104 S.Ct. at 3421, 82 L.Ed.2d at 698. (Footnote omitted).

Furthermore, *Leon* states that the good faith exception is not applicable in certain situations and that in these circumstances, suppression of the evidence is the appropriate remedy where: (1) "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. *Franks v. Delaware*, 438 U.S. 154 [98 S.Ct. 2674, 57 L.Ed.2d 667] (1978)"; (2) "the issuing magistrate wholly abandoned his judicial role" thus becoming a rubber stamp for the police; (3) the affidavit is " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' *Brown v.*

*Illinois*, 422 U.S. [590, 610–11, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416, 431 (1975)] (Powell, J., concurring in part); see *Illinois v. Gates*, 462 U.S. at 260, 103 S.Ct. at 2344, 76 L.Ed.2d at 563 (White, J., concurring in the judgment)]"; and (4) the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." 468 U.S. at 923, 104 S.Ct. at 3421–22, 82 L.Ed.2d at 698–99.

Finally, *Leon*, 468 U.S. at 923 n. 24, 104 S.Ct. at 3421 n. 24, 82 L.Ed.2d at 698 n. 24, makes it clear that the good faith exception would not sanction a bare bones affidavit:

> "Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search. *See Whiteley v. Warden*, 401 U.S. 560, 568[, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306, 313] (1971)." [18]

In the present case, notwithstanding *Leon*, we are led to the same conclusion that we earlier stated with regard to the *Gates'* analysis. The affidavit in question is so conclusory with regard to its probable cause information as to render it a "bare bones" affidavit. Even under *Leon*, a bare bones affidavit is not subject to rehabilitation by the good faith exception.[19] This is true because no reasonably

---

**18.** In *Leon*, the officer's application for a warrant was characterized by the Supreme Court as not being a bare bones affidavit:

> "Officer Rombach's application for a warrant clearly was supported by much more than a 'bare bones' affidavit. The affidavit related the results of an extensive investigation and, as the opinions of the divided panel of the Court of Appeals make clear, provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause. Under these circumstances, the officers' reliance on the magistrate's determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate." 468 U.S. at 926, 104 S.Ct. at 3423, 82 L.Ed.2d at 701.

**19.** We find nothing in *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d

737 (1984), which is helpful to the issue in this case. *Sheppard* followed *Leon* and dealt with a search warrant that had been altered by a magistrate from a form used in drug searches. The affidavit for the warrant was admittedly sufficient and outlined the items sought to be seized in connection with a murder investigation. The officer who gave the affidavit was assured by the magistrate that the warrant form had been properly changed, but it still only authorized a search for controlled substances. The Supreme Court concluded that because the officer who executed the affidavit, which was found to be proper, "knew what items were listed in the affidavit presented to the judge, and he had good reason to believe that the warrant authorized the seizure of these items," the good faith exception applied. 468 U.S. at 989 n. 6, 104 S.Ct. at 3429 n. 6, 82 L.Ed.2d at 744 n. 6.

well-trained officer could have concluded that there were sufficient facts stated in the warrant and affidavit to justify a conclusion of probable cause for the issuance of the warrant.[20]

For the foregoing reasons, the judgment of the Circuit Court of Harrison County is reversed and the case is remanded.

Reversed and Remanded.

NEELY, Justice, concurring in part and dissenting in part:

Relying in part upon a misbegotten footnote of my creation in *State v. White*, 167 W.Va. 374, 280 S.E.2d 114 (1981), the majority today holds that:

> Under Rule 41(c), W.Va.R.Civ.P., it is improper for a circuit court to permit testimony at a suppression hearing concerning information not contained in the search warrant affidavit to bolster the sufficiency of the affidavit unless such information had been contemporaneously recorded at the time the warrant was issued and incorporated by reference into the search warrant affidavit.

*Supra*, 167 W.Va. at 374, 280 S.E.2d 114. Because I now believe my understanding of Rule 41(c) was incorrect in *White*, I believe the majority's understanding is incorrect today. Accordingly, I dissent in part.

Rule 41(c) provides in pertinent part:

> Before ruling on a request for a warrant the magistrate or circuit judge may require the affiant to appear personally and may examine under oath the affiant and any witnesses he may produce, provided that such proceeding shall be taken down by a court reporter or recording equipment and made part of the affidavit.

Rule 41(c) thus provides that a warrant affidavit may be supplemented by contemporaneous oral testimony given the judge or magistrate by the affiant provided two conditions are met: (1) The affiant is under oath when giving the testimony, and (2) the affiant's testimony is contemporaneously recorded and incorporated into the affidavit.

*U.S. Const.* Amendment IV requires that "... no warrants shall issue, but upon probable cause, *supported by oath or affirmation ...*" (emphasis supplied). Few courts have ruled directly upon the issue of whether this clause requires that all oral statements presented in an application for a warrant must be made under oath. However, those courts that have considered the issue have uniformly held that unsworn oral testimony may not form a basis for a determination of probable cause. *See Frazier v. Roberts*, 441 F.2d 1224 (8th Cir. 1971); *Tabasko v. Barton*, 472 F.2d 871 (6th Cir.1972), *cert. denied*, 412 U.S. 908, 93 S.Ct. 2288, 36 L.Ed.2d 974 (1973); *People v. Asaro*, 57 Misc.2d 373, 291 N.Y.S.2d 613 (1968). I greet with some skepticism the contention that, in this secular age, oath-taking provides a meaningful prophylaxis against prevarication. However, courts having considered the question make colorable contentions that oath-taking is constitutionally required. Although I am not persuaded that an oath should be accorded talismatic qualities in the law, I am not prepared to say that an oath is not required by the law of the land.

In the case at bar, it is undisputed that Officer Davis was not under oath when he testified to the magistrate regarding the reliability of the confidential informant. Accordingly, the circuit judge should not have permitted testimony regarding Officer Davis' unsworn statements to the magistrate to be offered during the suppression hearing. Insofar as the majority's holding is based on the Fourth Amendment's re-

---

**20.** Because we find that the affidavit does not meet the *Leon* good faith exception, we do not decide the issue of whether we would adopt this rule into our jurisprudence. Independently of the federal exclusionary rule first formulated in *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and made binding on the states through the Fourteenth Amendment to the United States Constitution in *Mapp v.*

*Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), we have uniformly held prior to *Mapp* that where a search warrant is invalid, the evidence seized is not admissible. *State ex rel. Lewis v. Warth*, 131 W.Va. 437, 48 S.E.2d 6 (1948); *State v. Greer*, 130 W.Va. 159, 42 S.E.2d 719 (1947); *State v. Shahan*, 104 W.Va. 578, 140 S.E. 533 (1927).

quirement that oral testimony supporting probable cause be sworn (of which requirement Rule 41(c) is merely reiterative), I concur.

However, although the oath-taking prong of Rule 41(c) may be a constitutional imperative, the contemporaneous recording prong is not. The Fourth Amendment does not require that sworn oral testimony given in support of an application for a search warrant be recorded or reduced to writing. *United States ex rel. Gaugler v. Brierley*, 477 F.2d 516 (3rd Cir.1973); *Sherrick v. Eyman*, 389 F.2d 648 (9th Cir.1968), *cert. denied*, 393 U.S. 874, 89 S.Ct. 167, 21 L.Ed.2d 144 (1968); *United States v. Berkus*, 428 F.2d 1148 (8th Cir.1970); *McCary v. Commonwealth*, 228 Va. 219, 321 S.E.2d 637 (1984); *Tygart v. State*, 248 Ark. 125, 451 S.W.2d 225 (1970); *State v. Walcott*, 72 Wash.2d 959, 435 P.2d 994 (1967). *Contra, see* Note, "The Constitutionality of the Use of Unrecorded Oral Testimony to Establish Probable Cause for Search Warrants," 70 Va.L.Rev. 1603 (1984).

Today the majority elevates the contemporaneous recording prong of Rule 41(c) to a quasi-constitutional level in that it implies that the same sanctions should be applied for violation of the rule as are applied to violation of the *Constitution*. The majority holds that testimony regarding sworn but unrecorded statements made in support of a warrant application may not be introduced "to bolster the sufficiency of the affidavit" at a suppression hearing. The result of such a holding is that warrants issued upon probable cause and supported by oath or affirmation may be held invalid due to the violation of a rule of mere *procedural* rather than *constitutional* dimension. Given the practicalities of law enforcement in this State, I believe this to be grossly ill-advised.

The *Federal Rules of Criminal Procedure* were promulgated by the ⁄Supreme Court of the United States in order to outline the procedures to be followed by federal law enforcement officers, federal magistrates, and federal judges. Rule 41(c) at promulgation comported with the formalistic spirit exemplified by *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. U.S.*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In a grand gesture of mimesis, expedience and sloth, the West Virginia Supreme Court of Appeals adopted the federal rules more less wholesale in 1981. However, the realities of law enforcement at the federal level stand in stark contrast to the realities of law enforcement in West Virginia.

Federal law enforcement officers and federal magistrates are blessed with high pay, excellent and extensive training, and superb logistical support. For example, an FBI agent working in the field makes between $30,000 and $47,000 per year. A policeman in the City of Mann, Logan County, makes approximately $10,000 per year. A full-time United States Magistrate makes $68,400 per year. In West Virginia, a full-time magistrate makes between $17,250 and $25,125 per year, and the judges of this Court earn $13,400 per year less than the federal judicial officer who disposes of traffic tickets issued in National parks! No individual may serve as a federal magistrate unless he has been for at least five years a member of the bar in good standing. 28 U.S.C.A. § 631(b)(1) (1982). Of a magistrate in West Virginia it is required only that: (a) he be at least twenty-one years of age, (b) he have a high school education or its equivalent, (c) he not have been convicted of any misdemeanor or felony involving moral turpitude, and (d) he attend a training course for magistrates. *W.Va.Code* 50–1–4 (1976).

Upon election, a magistrate in this State is given one week of orientation regarding the entirety of his official duties before assuming office. Thereafter he is required to attend a series of four-day training sessions, held on the average of three times per year. During the average training session, a magistrate receives approximately three hours of instruction regarding the constitutional and procedural facets involved in the issuance of a search warrant. At the end of each four-day session, the magistrate must take an examination on the material covered during the session. The magistrate must achieve a score of seventy out of one hundred on four of six examinations administered (one per four-day session) in order to be certified. How-

ever, a magistrate who fails to obtain certification is not required to step down.

In a nutshell, then, the average magistrate in West Virginia is a high school graduate living in a rural area, paid $17,250 per year, and given as little as three hours of instruction regarding search warrants. The average federal magistrate has a college degree, a law degree, at least five years of practice at the bar, and is paid $68,400 per year. It is absurd to hold (where the *Constitution* does not command it) a magistrate of this State to the same high standard required of his federal counterpart, when doing so will not prompt the legislature to improve the qualities of our magistrates, and the only effect will be to release dangerous felons to prey upon society at large.

Moreover, the federal version of the contemporaneous recording prong of Rule 41(c) was promulgated in 1972, a by-product of the criminal procedure revolution wrought by the Warren Court. Since that time (and for that matter, since the promulgation of the West Virginia Rules of Criminal Procedure in 1981), U.S. supreme court decisions have evidenced a reassessment of the law of criminal procedure in general. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) and *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) both indicate a rethinking of the proper balance to be struck between the civil rights of the accused and the duty of the state to protect the public. Part of this reassessment has involved an emerging skepticism about the desirability of a rigidly formalistic approach to Fourth Amendment questions. In light of the retreat from formalism in actual *constitutional* jurisprudence sounded by *Gates* and *Leon*, it seems highly inappropriate that we should allow criminal offenders to go free due to a magistrate's failure to comply with a *procedural* technicality lacking constitutional significance.

The majority holds that failure to comply with the contemporaneous recording prong of Rule 41(c) renders a warrant fatally defective. In the absence of a *Leon* good faith exception, evidence obtained during a search authorized by a defective warrant may not be used against the accused at trial. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Consequently,

many criminal offenders may go free as a result of a magistrate's procedural error. Although such a holding may not trouble the majority too greatly in this marijuana case, I doubt my colleagues would have been so solicitous had Mr. Adkins been a psychopathic axe-murderer. And I believe it is imprudent to indicate to circuit courts hearing serious criminal cases that failure to comply with the contemporary recording prong of Rule 41(c) necessarily entails the result reached in this case.

The contemporaneous recording prong of Rule 41(c) is not constitutional law, nor should it be. It is a hortatory directive to the law enforcement officers and magistrates of this State regarding the preferred method of preparing a warrant affidavit. To exhort our law enforcement officers and magistrates to abide by the practice outlined in the contemporaneous recording prong of Rule 41(c) is indubitably laudable. To allow dangerous criminals to walk the streets of this State due to the *purely procedural* miscues of these minimally paid, minimally trained, and minimally supported men and women is a farce of Brobdingnagian proportion, a dangerous social policy, and a serious breach of our duty to protect the people of this State.

I am authorized to report that BROTHERTON, J., joins me in this dissent.