No. 12-1486      -      *State of West Virginia v. Lamar Dorsey*

**FILED**

**June 4, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Davis, Chief Justice, dissenting:

The petitioner in this case, Lamar Dorsey ("Mr. Dorsey"), was convicted of several drug offenses. In his appeal, Mr. Dorsey asked this Court to grant him a new trial because of the trial court's failure to suppress evidence unlawfully obtained from the room where he stayed.[1] The majority opinion rejected Mr. Dorsey's arguments on this issue on the grounds that he did not have a constitutionally recognized expectation of privacy in the dwelling where the evidence was seized. I am deeply troubled by the adverse, and significant, constitutional implications of the majority's decision of this issue. Therefore, for the reasons set out below, I respectfully dissent.

To begin, the majority opinion points out that all of the dispositive evidence against Mr. Dorsey was seized from a room that he rented in the home of a drug addict named Wendi Gillespie. The majority opinion acknowledged that Mr. Dorsey did not give the police consent to enter and search the home where he lived. Further, the majority opinion correctly concludes that the police did not have a search warrant to enter the home where Mr. Dorsey resided. Under these circumstances, the majority opinion recognized that, generally,

---

[1]Mr. Dorsey assigned other errors, but only the suppression issue warranted the reversal of his convictions.

1

the police would need a search warrant to enter the home where Mr. Dorsey was living. However, the majority opinion applied an *exception* to the warrant requirement that it contended justified the unlawful entry into the home where Mr. Dorsey resided. This exception to the warrant requirement was set out as new Syllabus point four of the majority opinion. It states:

> An individual who is unwelcome in the dwelling of another, or who has procured or maintained access to the dwelling through coercion, threats of violence or exploitation, does not have an expectation of privacy that society is willing to recognize as reasonable and, therefore, cannot claim the protections afforded by the Fourth Amendment of the United States Constitution and Article III, Section 6 of the West Virginia Constitution.

To support its application of this exception to the warrant requirement, the majority opinion relied upon one incident where Mr. Dorsey allegedly stated to Ms. Gillespie that he would kill her if she did not leave his room while he was making a drug transaction. The majority opinion also relied upon a visual threat that Mr. Dorsey made to Ms. Gillespie when he told her not to open the door after the police knocked. Other than these two events, the record in this case does not show that Mr. Dorsey forced Ms. Gillespie to allow him to live in her home. In fact, the living arrangement between the two was correctly described in the factual and procedural background section of the majority opinion as follows:

> In exchange for allowing petitioner to stay in her home, Ms. Gillespie was paid $20.00 in crack cocaine for every $100.00 of crack cocaine sold by the petitioner. Additionally, the petitioner supplied Ms. Gillespie with other drugs, including

2

marijuana, and helped pay at least one of her utility bills.

As a general matter, I have no objections to the principle of law set out in new Syllabus point four. However, the evidence relied upon by the majority opinion simply did not support the application of this exception to the warrant requirement. By allowing the police to conduct the search that occurred in this case, the majority opinion has ensured that no police officer in West Virginia will ever need a warrant to enter and search any person's home.

The facts of this case show that the "State Police received two separate tips from known informants that [Mr. Dorsey] was selling crack cocaine out of Ms. Gillespie's residence." Rather than going to a magistrate to obtain a search warrant, based upon statements by two known informants, four State troopers decided to go to Ms. Gillespie's home to search without a warrant. When they arrived at the home, one of the troopers ordered Ms. Gillespie to open the door, and, when she did, the troopers burst into the home. Mr. Dorsey was present in the home. Neither Ms. Gillespie nor Mr. Dorsey gave the troopers consent to enter or to search the home. In this situation, Mr. Dorsey had an independent right to argue that the police needed a search warrant to enter and search, *at a minimum*, the room that he rented from Ms. Gillespie.[2] This Court held in Syllabus point 1 of *State v. Adkins*,

---

[2]The evidence Mr. Dorsey sought to have suppressed was unlawfully obtained from his room.

3

176 W.Va. 613, 346 S.E.2d 762 (1986), that

> [a] defendant who is *more* than a casual visitor to an apartment or dwelling in which illegal drugs have been seized has the right under the Fourth Amendment to the United States Constitution and Article III, Section 6 of the West Virginia Constitution to challenge the search and seizure of the illegal drugs which he is accused of possessing.

(Emphasis added).

Mr. Dorsey was not a casual visitor–he was *more* than a casual visitor. Mr. Dorsey had been living in Ms. Gillespie's home for several weeks. In this situation, both the state and federal constitutions are clear in holding that Mr. Dorsey had "a legitimate expectation of privacy in the home[.]" *United States v. Gray*, 491 F.3d 138, 153 (4th Cir. 2007). Indeed, in *Minnesota v. Olson*, 495 U.S. 91, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990), the Supreme Court determined that an overnight guest has a reasonable expectation of privacy in his host's home. Moreover, the facts of this case are distinguishable from the decision in *Minnesota v. Carter*, 525 U.S. 83, 119 S. Ct. 469, 142 L. Ed. 2d 373 (1998), in which the Supreme Court determined that two defendants, who were in another person's apartment for a short time solely for the purpose of packaging cocaine, had no legitimate expectation of privacy in the apartment. In this case, Mr. Dorsey had been living in Ms. Gillespie's home as a tenant for at least three weeks. *See Commonwealth v. Govens*, 632 A.2d 1316 (Pa. 1993) (holding that a person who is more than a casual visitor to a dwelling in which illegal drugs have been seized has standing to challenge the search and seizure of

4

the drugs he is accused of possessing).

The majority opinion further attempts to legitimize the search by mentioning, in footnote 6, that the troopers had engaged in a valid "knock and talk" encounter. However, the majority opinion's application of the "knock and talk" doctrine is inconsistent with the parameters of the doctrine as recognized by the United States Supreme Court in *Kentucky v. King*, ___ U.S. ___, 131 S. Ct. 1849, 179 L. Ed. 2d 865 (2011):

> When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do. And whether the person who knocks on the door and requests the opportunity to speak is a police officer or a private citizen, the occupant has no obligation to open the door or to speak. When the police knock on a door but the occupants choose not to respond or to speak, the investigation will have reached a conspicuously low point, and the occupants will have the kind of warning that even the most elaborate security system cannot provide. And even if an occupant chooses to open the door and speak with the officers, the occupant need not allow the officers to enter the premises and may refuse to answer any questions at any time.

*King*, ___ U.S. ___, 131 S. Ct. at 1862, 179 L. Ed. 2d 865 (internal quotations and citations omitted). In this proceeding, the evidence is quite clear in showing that the troopers threatened Ms. Gillespie into opening the door and then rushed into the house without ever seeking permission to enter from her or from Mr. Dorsey. The "knock and talk" doctrine simply does not permit such unlawful conduct.

In sum, this case presented a classic example of why the federal and state

5

constitutions generally require a search warrant when the police seek to search a residence. The troopers in this case conceded that they did not have sufficient evidence to permit them to obtain a search warrant. Instead, they decided to create exigent circumstances to justify entering and searching the residence of their own accord. The lead trooper in the case gave this statement as to what the troopers intended to do:

> Once again, when I went to the residence and knocked on the door and entered the residence. [sic] It was not to conduct a search, [it] wasn't to do anything other than to locate and make sure that–[we] had reasonable suspicion that a crime was occurring . . . . I simply went into the residence to secure individuals inside the residence [, to] detain them to advise them what was going on, to let them know what my suspicions were and then to investigate the matter further.

This testimony by the trooper is clear in stating that the troopers went to the residence to "secure" everyone inside to let them know they believed criminal conduct was occurring in the home. Since when have the federal and state constitutions authorized the police to make a warrantless entry into a residence to "secure" everyone inside and to inform them that illegal conduct is taking place in the residence? Nevertheless, the majority opinion essentially has recognized that *both* constitutions authorize such an entry and search. Correspondingly, the majority's decision also has rendered the constitutional right to privacy nonexistent in the State of West Virginia. No more shall this State's citizens enjoy refuge in the sanctity of their homes because the majority's opinion permits the police to intrude into dwellings without following the appropriate procedures designed to safeguard the constitutional freedoms of our citizenry.

6

Because I cannot condone such a blatant usurpation of basic fundamental liberties, I respectfully dissent.